MONTROSE SAVINGS BANK,
Plaintiff-Respondent,

v.

Darwin LANDERS, Defendant-Appellant.

No. WD–34585.

Missouri Court of Appeals,
Western District.

Aug. 14, 1984.

Austin F. Shute, L. Patrick O'Brien, Kansas City, for defendant-appellant.

Robert K. Ball, David R. Odegard, Kansas City, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Montrose Savings Bank (hereinafter "bank") instituted suit, in the Circuit Court of Jackson County, against Darwin C. Landers (hereinafter "appellant") for payment upon thirteen promissory notes which had been obtained by fraud and deceit. Appellant, in a motion for summary judgment and thereafter in a motion for a directed verdict, raised the affirmative defense of a covenant not to sue as a complete bar to this litigation. The court denied both motions and following trial, without the aid of a jury, entered judgment for the bank awarding $13,838.00 in actual damages, $250.00 in punitive damages, together with costs of this litigation.

Appellant asserts the circuit court erred by not granting his motion for a directed verdict. Appellant also challenges the award for actual damages, claiming it is excessive and not supported by the evidence.

Since this is a bench-tried case, the judgment must be affirmed unless there is no substantial evidence supporting it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Trenton Trust Co., v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The litigants did not request written findings of fact or conclusions of law and none were issued. Thus, all factual issues are deemed in accordance with the results reached and the judgment must be affirmed under any reasonable theory supported by the evidence. *Elliott v. West*, 665 S.W.2d 683, 690 (Mo.App. 1984). Additionally, this court must accept as true all evidence and permissible inferences therefrom favorable to the prevailing party and disregard any contradictory evidence. *Id.; Gubernik v. Han-Dee Pak*, 668 S.W.2d 574, 575 (Mo.App.1984).

In April, 1972, appellant and William Putthoff purchased a used car enterprise doing business as Clean Car Center, Inc., a Missouri corporation. On April 19, 1972, appellant and Putthoff entered into a credit agreement with the bank to finance the corporation's inventory. Separate promissory notes and security agreements were drafted for each automobile purchased, and the bank took back a security interest in each automobile. The individual promissory notes bear the simple interest rate of eight percent per annum until maturity. Each note also includes a clause that if a note, "is placed in the hands of an attorney for collection, all costs of collection and attorney fees shall be paid by signers and endorsers." Additionally, the bank required both appellant and Putthoff to personally guaranty each promissory note. The guaranties, by their terms, limited each guarantor's liability to those notes which he actually signed.

In February, 1974, Putthoff sold his entire interest in the corporation to appellant. The bank was not informed of Putthoff's withdrawal from the corporation, nor did it have any independent knowledge thereof. Appellant continued to finance purchases of automobiles by forging Putthoff's signature on thirteen promissory notes. In late

August, 1974, the corporation ceased doing business and defaulted on the notes.

The president of the bank, Mr. Daugherty, contacted Putthoff regarding payment of the overdue notes. Putthoff informed Daugherty he no longer participated in the business. No question of the genuineness of Putthoff's signature on the notes was raised because Putthoff assumed the notes in default were those he had signed prior to his withdrawal from the business.

The bank was unsuccessful in its efforts to collect payment on the notes. Hence, in September, 1978, the bank hired Theodore B. Barnes, an attorney, to do that which it could not. On December 7, 1978, Barnes contacted appellant and Putthoff demanding payment of the principal balance of $15,838.80 plus interest in the amount of $7,498.11. After several conferences between Barnes and appellant, a settlement was negotiated whereby appellant deeded to the bank a parcel of real estate (subsequently sold by the bank for $13,000.00) and $500.00 cash in return for the covenant not to sue on the promissory notes or his personal guaranty. The covenant not to sue was expressly authorized by the bank and duly executed. During negotiation of the settlement and prior to execution of the covenant not to sue, appellant was aware of Barnes' intent to sue Putthoff for the remainder of the note obligation. Appellant also was aware that neither Barnes nor the bank had knowledge of the forged signatures on the defaulted notes.

To collect the balance due on the notes, Barnes brought suit against Putthoff. After commencement of that litigation, Putthoff discovered that the promissory notes were dated after his withdrawal from the corporation and, therefore, did not bear his genuine signature. Shortly thereafter, appellant informed both Barnes and Putthoff he had forged Putthoff's signature on the promissory notes. The bank dismissed the action against Putthoff and then brought this action against appellant seeking damages for fraud and deceit.

On January 3, 1980, the bank filed its petition against appellant praying for actu-al damages of $12,405.90, punitive damages, plus interest and attorney fees. In his answer, appellant raised the covenant not to sue as an affirmative defense barring this lawsuit. Before trial, appellant moved for summary judgment, which the circuit court denied. After the presentation of evidence at trial, appellant moved for a directed verdict, which was also denied.

I

Appellant has candidly admitted forging Putthoff's signature on the promissory notes. Appellant argues that the covenant not to sue is so general as to be a complete bar to this action for fraud and deceit. In pertinent part the covenant reads:

> [T]he undersigned does hereby covenant ... to forever refrain and desist from instituting or asserting against said Darwin C. Landers any claim, demand, action or suit for his execution and delivery of the Notes ... (or) ... his Personal Guaranty ...

> [T]his instrument may be pleaded as a counterclaim to or as a defense in bar or abatement of any action of any kind whatsoever, brought, instituted or taken by or on behalf of the undersigned on account of said claims against said Darwin C. Landers.

The bank contends, of course, that the covenant is not broad enough to include appellant's forgery of Putthoff's signature which was unknown to the bank when the covenant was executed. Essentially, the bank argues it would not have executed the covenant had appellant divulged the fact he had forged Putthoff's signature on the promissory notes.

■ Under the prevailing law in Missouri, a covenant not to sue is considered a release for purposes of determining its legal effect. *See Bacon v. United States,* 321 F.2d 880, 884 (8th Cir.1963).

■ In interpreting the language of a release, the primary rule of construction, as in the case of construing any contract, is that the intention of the parties shall gov-

ern. Any question regarding the scope and extent of a release is to be determined according to what may fairly be said to have been within the contemplation of the parties at the time the release was given. This, in turn, is to be resolved in the light of all the surrounding facts and circumstances under which the parties acted. *Continental Bank and Trust Company v. American Bonding Company,* 605 F.2d 1049, 1056–1057 (8th Cir.1979); *State ex rel. Normandy Orthopedics v. Crandall,* 581 S.W.2d 829, 833 (Mo. banc 1979); *Adriatic Insurance Company v. Brewer,* 657 S.W.2d 692, 694 (Mo.App.1983); *Williams v. Riley,* 243 S.W.2d 122, 124 (Mo.App. 1951).

■ In the instant case, the preceding legal principle applies even though the language of the covenant itself, given a literal reading, indicates a general release from all obligations and liabilities. *See State ex. rel. Stutz v. Campbell,* 602 S.W.2d 874, 876 (Mo.App.1980). The rationale for this conclusion is although a release may be clear on its face, where settlement has been based upon fraud, misrepresentation, or unfair dealing, the courts will look toward the parties' intentions to ascertain the scope of the release. *Adriatic Insurance Company v. Brewer, supra* at 694.

■ There is ample evidence the bank did not intend to release appellant from his liability stemming from the forged promissory notes. Appellant was cognizant of his act of forging Putthoff's signature and the implications therefrom. Additionally, appellant knew the bank would attempt to collect the balance due on the promissory notes from Putthoff and that such collection would have been based upon the forged promissory notes. Armed with this knowledge, appellant then entered into the covenant not to sue.

Appellant argues his fraud upon the bank should be adjudged fraud in the treaty, rather than fraud in the factum. *A fortiori,* the covenant not to sue would be voidable rather than void. *Nelson v. Browning,* 391 S.W.2d 873, 877 (Mo.1965).

This case, however, may be resolved without determining whether the covenant is void or voidable. Assuming, *arguendo* that the covenant is merely voidable, the fact remains that when it was executed the bank did not intend to release the individual who signed the promissory notes. Because appellant forged Putthoff's signature on the notes, the forged signature operates as appellant's own in favor of the bank. Section 400.3–404(1), RSMo 1978. although technically an obligation based upon the promissory notes, as set forth in the covenant not to sue, appellant's liability through his forgery is something the bank did not intend to release.

This narrow construction of general releases was approved by the Supreme Court of Missouri in *Kopp v. Traders Gate City National Bank,* 210 S.W.2d 49, 53 (Mo. banc 1948), wherein the Court stated:

[G]eneral words, although the most broad and comprehensive, are to be limited to particular demands, where it manifestly appears, by the consideration, by the recital, by the nature and circumstances of the several demands to one or more of which it is proposed to apply the release, that it was so intended to be limited by the parties.

*Kopp* was cited with approval in *Drake and Beemont Mutual Aid Society Against Fire and Lightning v. United States,* 330 F.2d 548, 553 (8th Cir.1964). Therein, the Court of Appeals for the Eighth Circuit cited 45 Am.Jur., Release, § 51, at 710 (1969) in stating:

Courts of equity will restrict a general release to the thing or things intended to be released. As in a release of all demands, when some particular demand was in view, the court of chancery *will not allow the releasee to take advantage of the general words to defeat the collection of a demand not then in the minds of the parties* (emphasis added).

Accordingly, this court does not construe the covenant not to sue as extending to appellant's liabilities and obligations arising from the forged promissory notes. The bank did not contemplate, at the time of

executing the covenant, the possibility that appellant forged Putthoff's signature on the notes. Barnes testified that had appellant disclosed this information, then the covenant would not have been executed. Appellant deceived the bank to this extent, and such deceit should not be rewarded. The covenant not to sue does not operate as a bar to this action. Thus, the trial court did not err in denying appellant's motions for summary judgment and directed verdict.

## II

The bank's petition filed January 3, 1980, prays for actual damages of $12,405.90. The judgment rendered by the trial court includes actual damages in the amount of $13,838.00, punitive damages of $250.00 and costs of the litigation. Neither the bank's petition nor the trial court's judgment set forth the calculations upon which the respective amounts are based. Consequently, appellant argues that not only is the judgment excessive, but it is not based upon any discernible method of computation.

In ruling on appellant's contention, this court is required to sustain the judgment unless there is no substantial evidence supporting it. *Letsch v. Pickworth*, 559 S.W.2d 77–78 (Mo.App.1977). Findings by a trial court as to damages recoverable are entitled to great weight on appeal and will not be disturbed unless it is shown that the damages awarded were clearly wrong, could not have been reasonably determined, or were excessive. *Tudor v. Tudor*, 617 S.W.2d 610, 614 (Mo.App.1981).

At trial, the bank's evidence indicated a total balance of $22,057.92 due on the promissory notes as of December 22, 1978. As the bank states in its brief, this is an erroneous sum having been arrived at by compounding the eight percent interest which each promissory note bears. Because the notes are short-term obligations, the simple rather than compound interest should have been calculated. By so doing, the proper calculation of the amount due as of December 22, 1978, is $21,296.05. Sub-tracted from this is the amount of $13,-500.00, which consists of the sale price of the real estate deeded to the bank by appellant plus $500.00 in cash. This leaves an amount due of $7,796.05 as of December 22, 1978. Also, up until this point the collection fees accumulated by Barnes amounted to $678.11.

Trial was held and judgment issued four years and one month (one day shy thereof) after the above-mentioned transaction. Appellant's partial payment of $13,500.00 was applied first to the interest amount of $5,082.82, and the remainder to the principal of $16,213.23. *See Baker v. J.W. McMurry Contracting Company*, 282 Mo. 685, 223 S.W. 45, 49 (1920); *Sutton v. Libbey*, 201 S.W. 615, 618 (Mo.App.1918). Thus, as of December 22, 1978, the amount due of $7,796.05 consisted entirely of principal upon which interest still accrued. By the time the trial court issued its judgment the interest expense on the principal amounted to $3,170.37 calculated simply. In addition to this interest expense and the principal is $678.11 in collection fees. The aggregate of these three factors is an actual damage amount of $11,644.53.

Therefore, the judgment herein is affirmed, but it is modified and reduced. Respondent is to have judgment against appellant in the sum of $11,644.53 actual damages. That portion of the judgment awarding $250.00 in punitive damages and assessing costs against appellant remains intact.

All concur.