Josephine A. ANDES, Appellant,

v.

Michael J. ALBANO, et al., Respondents,

Theodore R. Knox, et al., Defendants.

No. 75027.

Supreme Court of Missouri,
En Banc.

May 25, 1993.

---

938 

David T. Greis, William H. Pickett, Kansas City, for appellant.

Michael W. Manners, Kevin Blackwell, Independence, for respondents.

LIMBAUGH, Judge.

Josephine Andes appeals from an order of summary judgment in favor of defendants Michael J. Albano and Rose Anne Nespica. The Court of Appeals, Western District, reversed. We granted transfer pursuant to article V, section 10, of the Missouri Constitution, to consider the validity of a provision in a decree of dissolution releasing opposing counsel from "any claims, known or unknown." We affirm the judgment of the trial court.

## I.

In 1984, Andes initiated dissolution proceedings against her former husband, John Frick, in the Circuit Court of Jackson County. Both parties were represented by counsel at all times. Following lengthy and often bitter negotiations, the dissolution action was settled on September 24, 1985, the morning of trial, when both parties executed a handwritten written settlement agreement. Paragraph 17 of that document stated that each party would "release all claims known and unknown agst. the other & their respective counsel." At a hearing later that same day to confirm the agreement and grant the dissolution, the following question was asked of Andes:

You also agree to release any claim known or unknown against John, and John agrees to do the same against you and each of you likewise release any claims that you might have against the counsel of another party; is that correct?

Andes responded under oath:

That's correct.

Andes and Frick later executed a formal version of the settlement agreement to coincide with the testimony presented in court and approved by the trial judge. Frick signed on September 25, 1985; Andes on October 9, 1985. Article VI of the final version declares that each party "further releases the other from any claims, known or unknown, which involves the other party and/or their respective counsel being, Charlotte P. Thayer, Michael J. Albano, and Rose Anne Nespica." Andes was represented by Thayer; Frick was represented by Albano and Nespica.

It is uncontested that beginning in April, 1984, Andes' home was wiretapped. It is also undisputed that Andes discovered the existence of the tap on or about December 7, 1984, ten months prior to signing the settlement agreement. Nearly four years later, on November 22, 1988, Andes filed suit in United States District Court under the federal wiretap act,[1] against Theodore Knox, a private investigator, and Leslie Albin, an associate of Knox. On June 2, 1989, while the state suit was pending, the federal claim was dismissed as time-barred by the three-year statute of limitations. 18 U.S.C. § 2520(e). The dismissal was affirmed by the Eighth Circuit Court of Appeals. *Andes v. Knox*, 905 F.2d 188 (8th Cir.1990).[2]

On April 4, 1989, while the federal suit was pending, Andes filed this cause against respondents and others[3] in the Circuit Court of Jackson County, alleging that they jointly and severally participated in the wiretapping of her home. She sought damages for invasion of privacy, civil conspiracy, and intentional infliction of emotional distress, as well as punitive damages under all three counts.

Albano's and Nespica's separate motions to dismiss both raised the defense of re-

1. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2520.

2. Shortly after the 8th Circuit affirmed, Andes filed a second suit in federal court, this time naming Albano and Nespica as defendants. This action also was dismissed as being time-barred, and again, the court of appeals affirmed, this time in an unpublished opinion.

3. These include her former husband, John Frick, the law firm of Paden, Welch, Martin & Albano, P.C., Rose Anne Nespica, Robert L. Trout, Theodore Knox and Leslie Albin. Frick and Albin were dismissed for lack of prosecution. However, the trial court overruled motions to dismiss the law firm, Trout and Knox.

lease. Treating their motions to dismiss as motions for summary judgment, the trial court held that there were no genuine issues of material fact and that movant was entitled to judgment as a matter of law. Albano and Nespica were then dismissed from the suit. Thereafter, the court, at Andes' request, designated its order as final and appealable. This appeal followed.

## II.

Under Rule 74.04(c), the trial court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once a movant has met this burden, the non-movant's only recourse is to show by counter-affidavits, depositions, answers to interrogatories, or admissions on file, that one or more of the material facts is genuinely disputed. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *ITT Commercial Financial Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 at 382 (Mo. banc April 20, 1993). As we stated in *ITT* this rule authorizes the resolution of claims as early as they are properly raised in order to avoid the expense and delay of meritless claims and to permit the efficient use of scarce judicial resources. *ITT*, at 381.

When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, according the non-movant the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487 at 489 (Mo. banc 1993).

Although movants sought summary judgment at the trial court level solely on the ground that Andes signed a general release, they now raise a second defense of *res judicata* based on the dismissal of Andes' federal lawsuit. Because we affirm the trial court's grant of summary judgment on the basis of the release provision, we do not address the defense of *res judicata*.

As noted, movants, Albano and Nespica, were required to make a prima facie showing under Rule 74.04(c) that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. *ITT*, at 381. To that end, movants introduced the Final Marital Settlement agreement, the draft agreement, and a transcript of the hearing testimony, all of which contained the release provision at issue.

There is a presumption of validity of an executed release. This presumption is founded in the policy of law to encourage freedom of contract and the peaceful settlement of disputes. *Sanger v. Yellow Cab Co. Inc.*, 486 S.W.2d 477, 480–81 (Mo. banc 1972). *See also, Landmark North County Bank v. National Cable Training Centers, Inc.*, 738 S.W.2d 886, 890 (Mo.App. 1987); *Grand Motors, Inc. v. Ford Motor Co.*, 564 F.Supp. 34, 38 (W.D.Mo.1982). Therefore, the release provisions in these documents introduced by movants constitute a prima facie showing that movants are entitled to judgment.

Andes opposed the motion at the trial court on numerous grounds: 1) the release language applied only to her former husband, or, alternatively, it was ambiguous as to whether it included the named attorneys; 2) there was no consideration between Andes and the attorneys; 3) the release was the product of duress; 4) the release was fraudulently obtained; and 5) the release violated public policy. On appeal, Andes also asserts that the court was without subject matter jurisdiction because movants are not third-party beneficiaries of the marital settlement agreement.

Andes, as non-movant, filed suggestions in opposition to the motion to dismiss and attached as exhibits: 1) an FBI investigative report of the private investigator, Theodore Knox; 2) a copy of the federal indictment against Knox; 3) a copy of a transcript in which Albano denies reading from a taped conversation; and 4) Andes' sworn affidavit.

## 1. Scope of Release

We are first asked to consider whether the scope of the release includes the named attorneys and whether the release of "any claims, known or unknown" includes allegations of wiretapping. Because it is undisputed that her former husband is released, the sole issue is whether the attorneys are similarly protected.

 Interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement, and the primary rule of construction is that the intention of the parties shall govern. *State ex rel. Normandy Orthopedics, Inc. v. Crandall,* 581 S.W.2d 829, 833 (Mo. banc 1979); *Community Title Co. v. Safeco Ins. Co. of America,* 795 S.W.2d 453, 457 (Mo.App.1990). Any question regarding the scope and extent of the release is to be resolved according to what may fairly be said to have been within the contemplation of the parties at the time the release was given. This, in turn, is to be resolved in light of all the surrounding facts and circumstances under which the parties acted. *Normandy Orthopedics,* 581 S.W.2d at 833; *Community Title,* 795 S.W.2d at 457. However, language that is plain and unambiguous on its face will be given full effect within the context of the agreement as a whole unless the release is based on fraud, accident, misrepresentation, mistake, or unfair dealings. *See, e.g., Ragan v. Schreffler,* 306 S.W.2d 494, 499 (Mo.1957); *Montrose Sav. Bank v. Landers,* 675 S.W.2d 668, 671 (Mo. App.1984); *see also, Haines v. St. Charles Speedway, Inc.,* 689 F.Supp. 964, 968–69 (E.D.Mo.1988); *aff'd,* 874 F.2d 572 (8th Cir. 1989).

 The specific release in the Final Marital Settlement states:

Except as otherwise provided herein, each party releases the other from all claims and marital rights arising by reason of common law or the statutes pertaining to marriage.... Each party further releases the other from any claims, known or unknown, which involve the other party and/or their respective counsel being, Charlotte P. Thayer, Michael J. Albano and Rose Anne Nespica. Counsel for Respondent agrees that they will cooperate with Wife in any litigation involving Wife and her former counsel from the firm of Dietrich, Davis, et al.

The language of this clause is ambiguous. On the one hand, it states that "each party releases the other...." Although it is clear that "the other" means the other party, the release refers to the other party only. It does not state "the other party and counsel for the other party." On the other hand, the next clause refers to "claims, known or unknown, which involve the other party *and/or their respective counsel.*" (emphasis added). In our view, the release operates to relieve Frick of liability for all claims in which he is involved, regardless of the reference to claims which involve his counsel. We are at a loss, then, to give some meaning and purpose to the clause "and/or their respective counsel" unless the parties intended for the "respective counsel," themselves, to benefit from the release.

Given this ambiguity, we must determine the intent of the parties by resorting to the "surrounding facts and circumstances under which the parties acted." *Normandy Orthopedics,* 581 S.W.2d at 833. In this endeavor, the obvious starting place is the oral testimony elicited at the September 25, 1985, hearing.

Andes' testimony is dispositive. When put to the question "... and each of you likewise release any claims that you might have against the counsel of another party; is that correct?," she answered, "That's correct." Although the question was phrased in terms of releasing claims as opposed to releasing parties, it is clear that Andes agreed not to pursue claims against Frick or Frick's counsel.

There is no ambiguity, however, in the clause "any claims, known and unknown." These words are unqualified and unrestricted and would, therefore, include any allegations of wiretapping. *See Rudisill v. Lewis,* 796 S.W.2d 124, 127 (Mo.App.1990). As stated earlier, the only exceptions to the operation of such plain and unambiguous language is if the release is based on fraud,

accident, duress, mistake, misrepresentation, or unfair dealings. *Ragan*, 306 S.W.2d at 499; *Montrose*, 675 S.W.2d at 671; *see also, Ellis v. Reisenbichler*, 712 S.W.2d 468, 469 (Mo.App.1986).

### 2. Consideration

 Andes next argues that the release in favor of opposing counsel was not supported by separate consideration. Generally, if consideration is sufficient for a contract in other respects, it does not matter from whom or to whom it moves. *Restatement (Second) Contracts § 71(4) comment e* (1981); 17A Am.Jur.2d, Contracts § 125 p. 139 (1991). Because adequate consideration flowed between Andes and Frick, there was no need for additional consideration.

 Moreover, the test as to whether a release should include persons other than the parties to the underlying cause of action is not the adequacy of separate consideration, but the intention of the parties to release those other persons. *See, e.g., State ex rel. Normandy Orthopedics v. Crandall*, 581 S.W.2d at 833–34 (Mo. banc 1979); 76 C.J.S. Release § 48 p. 677 (1952). As we have concluded, the parties did indeed intend to release opposing counsel.

### 3. Third–Party Beneficiary Status

In a related argument, Andes contends that Albano and Nespica were not third-party beneficiaries and therefore lacked standing to enforce the release.

 A third-party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract. *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 213 (Mo.App.1987). Only those third parties for whose primary benefit the parties contract may maintain an action. *Id.* Contrary to Andes' argument, it is not necessary for the parties to the contract to have as their "primary object" the goal of benefitting the third parties, but only that the third parties be primary beneficiaries. *See e.g., Kansas City N.O. Nelson v. Mid–Western Const. Co.*, 782 S.W.2d 672, 677 (Mo.App.1989); *Laclede Investment Corp. v. Kaiser*, 596 S.W.2d 36, 41 (Mo.App.1980). Having found that the intent of the parties was to release Albano and Nespica, it follows that the respondents are persons for whose benefit the agreement was made, and they would have standing to enforce the release and to raise the defense of release to the present action. *See Peters v. Employers Mutual Casualty Co.*, 853 S.W.2d 300 at 301 (Mo. banc 1993).

### 4. Duress

Andes also contends that the release provision is unenforceable because she entered into it as a result of duress or coercion.

 The central question with respect to duress is whether, considering all the surrounding circumstances, one party to the transaction was "prevented from exercising his free will by the threats or wrongful conduct of the other." *McCandlish v. Linker*, 231 S.W.2d 162, 164 (Mo.1950); *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 768 (Mo.App.1987).

 Andes' sole evidence of duress is her affidavit in which she states that she "felt pressured and hurried by counsel, including my own, to sign said release agreement containing the paragraph numbered VI, the release." This bare allegation is conclusory; it does not assert facts that raise a genuine issue as to whether she was prevented from exercising her free will.

Her argument turns principally on a mistaken belief that the release provision bars her from bringing suit against her own attorney. Instead, the release bars Frick, the ex-husband, from bringing suit against counsel for Andes. She contends, nevertheless, that her counsel, Charlotte Thayer, breached a fiduciary duty and created a conflict of interest by releasing herself from liability from any suit by Andes. This conflict, Andes maintains, is what motivated Thayer to pressure and hurry Andes to sign the release. However, any allegation that her own counsel pressured

her to sign the release simply cannot be attributed to opposing counsel.

### 5. Fraud

Andes' next point is that Albano and Nespica fraudulently induced her to enter into the release agreement.

 In some circumstances, it has been held that silence or nondisclosure of a material fact, when used as an inducement to another, can be an act of fraud. *Taylor v. Western Casualty & Surety, Co.*, 523 S.W.2d 582, 586 (Mo.App.1975). However, before silence can amount to a representation upon which another party may rely, there must be a duty to speak. *Id.* This duty arises either where there is a relation of trust and confidence between the parties or where one party has superior knowledge or information not within the fair and reasonable reach of the other party. *See Centerre Bank of Independence, N.A. v. Bliss*, 765 S.W.2d 276, 284 (Mo.App.1988); *Smith v. New Plaza Pontiac, Co.*, 677 S.W.2d 941, 945 (Mo.App.1984); *Barylski v. Andrews*, 439 S.W.2d 536, 540 (Mo.App.1969).

Superior knowledge, alone, is not always sufficient.

> A party to a law suit is not bound to disclose to his adversary facts which tend to defeat or weaken his own right of recovery and he commits no fraud by remaining silent. So, too, one who is trying to settle litigation, has the right to keep his opinion upon the merits to himself, and is not guilty of fraud in so doing, for in such case the parties are dealing with each other at arm's length and are adversaries.

*Thompson v. Kansas City, C.C. & St. J. Ry. Co.*, 224 Mo.App. 415, 27 S.W.2d 58, 60 (1930) *quoting* 12 Ruling Case Law 319 (1916); 66 Am.Jur.2d, Releases, § 21 p. 696 (1991). Although this holding refers to parties, we believe it applies equally well to third-party beneficiaries.

 In this case, Albano and Nespica had no duty to speak. Neither they nor their client, Frick, were in a fiduciary relationship with Andes. Furthermore, Andes had ample information herself that suggested the possibility of the attorneys' complicity in the wiretap scheme. In this regard, we note that the deposition taken of Andes discloses: 1) that she knew of the wiretaps ten months prior to signing the release; 2) that she assumed her husband was responsible; and 3) that she knew that Albano and Nespica were not only aware of the wiretaps, but also in possession of the tapes. Finally, Andes and Frick, represented by their respective counsel, negotiated at arm's length.

Albano and Nespica correctly point out that Andes has failed to introduce evidence sufficient to establish a genuine issue as to the existence of fraud. First, the FBI report on the private investigator, Knox, indicates nothing more than that the husband hired Knox and that the attorneys had access to the tapes. This information, as we have said, was already known to Andes. Second, the deposition of Albano in which he denied reading from the transcript of a taped conversation does not demonstrate that he concealed information, he simply denied that he was using a transcript of the conversations. If anything, the fact that Andes was aware of such a transcript bolsters the movants' assertion that she had sufficient information of possible complicity on the part of the attorneys prior to signing the release. Third, Andes' affidavit testimony that she was unaware of a potential claim against the attorneys is at best self-serving and at worst a misrepresentation when viewed in light of both her own evidence and that presented by the movants. Finally, allegations that her own attorney was party to any fraud is mere speculation. There is absolutely no evidence indicating that Andes' attorney conspired with opposing counsel or sought to fraudulently induce Andes to sign the marital Settlement Agreement.

### 6. Public Policy

In her last point, Andes contends that public policy prohibits the release of opposing counsel. Her argument apparently hinges again on the mistaken belief that her own attorney has been released and the implications this may have on the cross release of opposing counsel. She states

that "where the release of the client's claims against his or her own attorney is inextricably intertwined with the purported release of claims against the other party's attorney, it cannot be said that these releases are so independent as to be severable." Because her own attorney has not been released under our interpretation of the release provisions, the effort to link opposing counsel in this manner must fail.

■ Nonetheless, the essential question is still whether Albano and Nespica, who apparently drafted the provision that releases them from liability, owe, as a matter of public policy, a special duty to opposing parties who subsequently sign the release. Andes offers no authority for this proposition. Moreover, in the situation before us, where Andes has been represented by separate counsel and where the contract has not been based on duress, fraud, mistake, or misrepresentation, our answer must be no.

Andes' primary protection is representation by independent counsel. Under Rule 1.8(h), attorneys may not obtain release from liability for malpractice claims unless permitted by law and unless their clients are independently represented. Thus, parties may always choose to call their own attorneys into account for not fully advising them of the implications of a release provision. However, nowhere in Rule 1.8 is there a prohibition against the release of opposing counsel. Additionally, parties may protect themselves by the obvious means of limiting the scope and extent of any release. Finally, as indicated earlier, neither parties nor attorneys may release themselves carte blanche from liability where the release has been obtained through fraud, duress, mistake, or misrepresentation.

The judgment is affirmed.

COVINGTON, HOLSTEIN, BENTON, THOMAS and PRICE, JJ., and AHRENS, Special Judge, concur.

ROBERTSON, C.J., not sitting.