Thomas A. WEIL, Plaintiff/Appellant,

v.

Kevin KIRN, Defendant/Respondent.

No. 71656.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 30, 1997.

James Leonard, St. Louis, for Plaintiff/Appellant.

Mark G. Arnold, Kathryn M. Koch, St. Louis, for Defendant/Respondent.

CRANDALL, Judge.

Plaintiff, Thomas A. Weil, appeals from the judgment of the trial court sustaining the motion for summary judgment of defendant, Kevin Kirn, on Weil's action for breach of contract. We affirm.

On November 3, 1983, Coldwell Banker Commercial Real Estate Services, a division of Coldwell Banker Commercial Group, Inc., ("CB Commercial") entered into a contract with Weil, where he would be employed as a real estate salesperson. CB Commercial and Kirn entered into a similar contract on January 15, 1987. In 1993, CB Commercial entered into a listing agreement with I.B.M. Corp. Under this agreement, CB Commercial was to solicit sublease offers for certain office space in a building, One Boatmen's Plaza, then leased by I.B.M. Weil and Kirn were identified as the "listing team" on a document that was part of this contract. A memorandum, dated August 11, 1993, from Kirn to "File" provides he and Weil agreed that for commissions on the "I.B.M./Boatmen's Plaza Listing," Weil would receive forty-percent and Kirn sixty-percent for the "listing side."

I.B.M. later decided to make more space available in the One Boatmen's Plaza building for subleasing by moving personnel to its "Maryville" location. Kirn had been attempting to secure a tenant for the "Maryville" location. The commission for this property would have gone solely to Kirn. On December 14, 1993, Weil, Kirn and R.A. Herrington, Senior Vice-President and Managing Officer for CB Commercial, had a meeting. Herrington would later state in his deposition that he "basically opened up the meeting with the comment that we were meeting to try to clarify what was going on with their relationship to help me better understand that so that I could determine what their involvement, respective involvement would be in the deal as far as servicing the client, as well as commission distribution." Herrington ultimately decided that the commission for I.B.M.'s space at One Boatmen's Plaza would be shared equally by Weil and Kirn for the first 50,000 square feet that was leased and Kirn would receive all the commission for any additional space that was leased. Weil received approximately $32,000 and Kirn approximately $124,000 as commissions for the I.B.M. listing.[1]

Weil brought an action for breach of contract, alleging that under the terms of his and Kirn's agreement, he was to receive forty-percent of the commission for the I.B.M. listing. Weil alleged and sought damages of $30,916.64. The trial court sustained Kirn's motion for summary judgment and found that the "Broker Salesman" contracts preclude a commission dispute from being litigated in the courts.

---

1. Weil alleged he received $31,985.22 and Kirn claimed Weil received $31,738.53.

■ When considering appeals from summary judgment, we review the record in the light most favorable to the non-movant, and give that party the benefit of all reasonable inferences. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Appellate review is essentially de novo. *Id.* A trial court's entry of summary judgment will be affirmed if it is sustainable as a matter of law on any ground. *Miller v. Smith,* 921 S.W.2d 39, 45 (Mo.App. W.D.1996).

The "Broker Salesman" contracts that Weil and Kirn signed both provide in part:

### OBLIGATIONS

1. Salesman shall read and be governed by ... the General Rules and Policies of Broker [CB Commercial] dated May 1, 1981, and any modifications, additions, or amendments thereto (herein collectively referred to as "Broker's Policies"); and Broker's standard office procedures.... Broker's Policies are hereby incorporated in this Agreement and they constitute a part hereof, as though set forth in full, and the provisions thereof, as from time to time in effect, shall be binding on Broker and Salesman. Any change in Broker's Policies shall be adopted by Broker in its sole discretion, without consultation with Salesman, and shall be effective and constitute an amendment and modification of this Agreement upon receipt by Salesman of a copy thereof. If there is a conflict between the provisions of this Agreement and Broker's Policies, Broker's Policies shall govern.

. . . .

9. If any dispute arises between Salesman and any other broker or salesman (whether or not working for Broker), Broker, in its sole discretion, shall have the right to settle the dispute and such settlement shall be binding upon Salesman.

### COMMISSIONS

Commissions shall be paid to Salesman in accordance with the provisions of Broker's Policies.

### GENERAL

. . . .

3. Broker and Salesman agree to all the foregoing terms and conditions and to use their skill, efforts, and abilities in cooperating to carry out the terms of this Agreement for the mutual benefit of Broker and Salesman.

The General Rules and Policies provides in part:

8. Agreements Between Salespersons:

Salespersons are encouraged to establish their own distribution as to the salespersons' portion of commissions according to the particular transaction. Written notice of these distributions should be made prior to the consummation of the transaction and filed with the Managing Officer or Profit Center Manager to prevent any misunderstandings. Any dispute over entitlement to or division of commissions will be resolved by the Company in accordance with paragraph 9, below.

9. Resolution of Disputes:

In the event of a dispute relating to the conduct of business, including, without limitation, the commission distribution, listing rights and obligations, etc., the Managing Officer or Profit Center Manager shall have the power to resolve the dispute. If the dispute involves more than one office or Profit Center, resolution shall rest with the next senior level of management. If the commission has been received, the Company reserves the right to hold the commission pending resolution of the dispute.

■ Kirn asserted in his motion for summary judgment that he was a third-party beneficiary to the "employment" contract between Weil and CB Commercial and therefore he could enforce the terms of that contract. A third-party beneficiary is one who is not privy to a contract or its consideration but who nonetheless may maintain a cause of action for breach of the contract. *Andes v. Albano,* 853 S.W.2d 936, 942 (Mo. banc 1993) (citation omitted). Weil does not argue on appeal that Kirn is not a third-party beneficiary of the contract. As a third-party bene-

ficiary, Kirn would have standing to enforce CB Commercial's power to resolve commission disputes and to raise the commission dispute clauses as a defense to Weil's action. *Id.*

Weil argues in his second point that the contractual clauses regarding CB Commercial's power to resolve commission disputes are unenforceable.[2] Weil contends that the clauses divest the courts of jurisdiction and are therefore void as against public policy.

■ Missouri courts have recognized the enforceability of contracts providing for non-judicial determinations regarding such issues as an engineer's measurement of the number of acres cleared, an appraiser's valuation of property, an architect's certification of payment and an attorney's determination as to title or marketability of a commodity. *Myers v. Union Electric Light & Power*, 334 Mo. 622, 66 S.W.2d 565, 569 (1933); *Carondelet Health System v. Royal Garden Associates*, 943 S.W.2d 669, 674 (Mo.App.W.D. 1997); *Hart and Son Hauling v. MacHaffie*, 706 S.W.2d 586, 588 (Mo.App.1986); *School Dist. of Kirksville v. Mississippi Valley Trust*, 116 S.W.2d 146, 149 (Mo.App.1938). "It is perfectly acceptable to agree by contract to have third parties decide values." *Carondelet Health System*, 943 S.W.2d at 674. In the present case, CB Commercial is by contract given the power to resolve disputes between salespersons involving commission distributions for the leasing of property. Although the contractual clauses at issue here are not identical to those present in the cases cited above, we find no compelling reason to not enforce the contract presented in this case.

In addition, other than his public policy argument, Weil's arguments only assert alleged violations of the Uniform Arbitration Act, Sections 435.350 to 435.470 RSMo 1994. As will be discussed, these arguments fail because there was not an agreement to arbitrate. Weil does not argue on appeal that

any fraud occurred or assert any other applicable ground for setting aside Herrington's decision. *See Myers*, 66 S.W.2d at 569; *Holt v. Williams*, 210 Mo.App. 470, 240 S.W. 864, 866–67 (1922); Restatement (Second) of Contracts Section 309 (1981)[3]. Weil also does not contend that Herrington's decision was not final. *See MECO Systems v. Dancing Bear Entertainment*, 948 S.W.2d 185, 193 (Mo.App. S.D.1997).

Furthermore, recognizing the enforceability of the contract is consistent with the public policy of permitting freedom of contract. The contractual clauses giving CB Commercial the power to resolve commission disputes are not void as against public policy. Weil's second point is denied.

Weil argues in his third point that the contractual clauses providing for CB Commercial to resolve commission disputes are void because there is no notice of arbitration language as required by Section 435.460 RSMo 1994. In his fourth point, Weil argues that the procedure used by CB Commercial to resolve the dispute violated other sections of the Uniform Arbitration Act. These arguments assume that the contractual clauses at issue constitute an agreement to arbitrate.

■ The commission clauses here do not present the typical arbitration clause such as where two parties to a contract agree to permit a third party to make a determination. Here, one party to the contract is given the power to resolve disputes between the other party to the contract and other salespersons. The contract does not require CB Commercial to resolve commission disputes. The commission clauses also do not recite any formal procedures for resolving disputes or include the term arbitrate or arbitration which is sometimes included in agreements to arbitrate. Review of the contract does not reveal an agreement to arbitrate and therefore the provisions of the Uniform Arbitration Act are not applicable. *See Carondelet Health System*, 943 S.W.2d at

---

**2.** In his reply brief, Weil states that the argument raised in the first point of his original brief was "misplaced."

**3.** Section 435.350 RSMo 1994 provides that "[a] written agreement to submit any existing contro-

versy to arbitration ... is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract...."

672 (holding that appraisal framework in an option contract was not an agreement for arbitration). Accordingly, Weil's third and fourth points are denied.

The judgment of the trial court is affirmed.

AHRENS, P.J., and KAROHL, J., concur.