Shannon HARRIS, Appellant,

v.

MID–WEST EGG DONATION, LLC, BJC Healthsystem and Janae Helgerson, Defendants,

and

The Washington University, Respondent.

No. ED 97489.

Missouri Court of Appeals, Eastern District, Division Two.

April 17, 2012.

David C. Knieriem, Clayton, MO, for appellant.

Kevin J. Adrian, Teresa M. Young, Samuel John Vincent III, St. Louis, MO, for respondent.

KENNETH M. ROMINES, J.

### Facts and Procedural History

This is an appeal from the circuit court's grant of summary judgment in favor of Washington University ("University") against Appellant Shannon Harris ("Harris"). Finding genuine issues of material fact, we reverse the judgment of the circuit court.

Mid–West Egg Donation, LLC ("Mid–West") was a corporation that acted as an intermediary between women willing to sell their eggs to recipients willing to pay for the eggs. Mid–West would locate and screen potential women and facilitate the arrangement, but it would not perform the actual medical procedure to remove the eggs. Mid–West would instead send the women to Washington University Medical Center to have the eggs retrieved, and the recipient would pay the University's medical bills.

Harris entered into a contract with Mid–West to sell her eggs. Typical of other contracts between Mid–West and women, Harris' contract provided that Mid–West would collect payment of $5,000 from the egg's recipient and place these funds in a trust account. University was not a party to this contract, but Mid–West referred her to University for the retrieval.

Harris underwent the appropriate procedure at Washington University Medical Center on 2 February 2010. In the months prior to this procedure, two other women who had contracted with Mid–West to sell their eggs informed University that Mid–West had not paid them. At one of the women's request, University inquired of Mid–West as to the reason for non-payment. On 12 October 2009, Mid–West sent University an email stating that payment for these women had been delayed because Mid–West had been the victim of identify theft, and Mid–West's bank would need ninety days to resolve the matter. University neither received, nor sought, other information regarding this matter prior to Harris' procedure on 2 February 2010.

Mid–West did not pay Harris any fees pursuant to the contract, and Harris filed a multi-count complaint against several parties. For purposes of this appeal, it is only relevant that Harris alleged a claim of fraudulent non-disclosure against University for failing to inform her that Mid–West had not paid other women prior to retrieval of Harris' eggs when University was aware of non-payment. On 1 June 2011,

University filed a motion for summary judgment on the fraudulent non-disclosure claim asserting that it owed no duty to Harris, it had no prior knowledge of Mid–West's failure to pay other donors, and that Harris did not suffer any pecuniary loss from the alleged non-disclosure. Without stating a reason, the trial court granted University's motion for summary judgment on 16 September 2011. Aggrieved, Harris now appeals.

## Discussion

In Harris' sole point on appeal, she argues that the trial court erred in granting summary judgment for University because there was a genuine dispute of material fact as to whether University owed her a duty, whether University breached that duty, and whether she was damaged by this breach. This Court reviews a trial court's grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom summary judgment was entered. *Id.* Summary judgment is appropriate only where there are no genuine issues of material fact such that one party is entitled to judgment as a matter of law. *Id.* at 380. Ordinarily, where the trial court does not articulate a reason for issuing summary judgment, we will affirm if summary judgment is appropriate under any theory. *Tonkovich v. Crown Life Ins. Co.*, 165 S.W.3d 210, 215 (Mo.App. E.D.2005). However, where the record is insufficient to allow adequate review of a theory, it naturally follows that we cannot say a party is entitled to judgment as a matter of law if the trial court does not articulate its reasoning and demonstrate that there are no facts at issue.

Harris first argues that there were genuine issues of material fact as to whether University owed her a duty to disclose information about Mid–West's financial dealings with other women, and that such failure constituted fraudulent nondisclosure. In Harris' second and third subpoints, she argues that genuine issues of material fact existed as to whether University's silence constituted a breach of this duty, and whether she suffered pecuniary loss by the fraudulent silence.

Fraudulent nondisclosure is not specifically recognized as a separate tort in Missouri, *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 765 (Mo. banc 2007), but it is closely related to fraudulent misrepresentation. To establish a claim for fraudulent misrepresentation, a party must show sufficient evidence of:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of the truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the representation;

(5) the hearer's reliance on its truth;

(6) the hearer's right to rely thereon; and

(7) the hearer's consequent and proximately caused injury.

*Bohac v. Walsh*, 223 S.W.3d 858, 862 (Mo. App. E.D.2007). Silence or nondisclosure becomes misrepresentation only when there is a duty to speak. *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993). The Missouri Supreme Court dealt with fraudulent nondisclosure in *Hess,* supra:

This Court has not recognized a separate tort of fraudulent nondisclosure, such as Hess asserts here. Instead, in such cases, a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation.

*Hess*, 220 S.W.3d at 765 (internal citation omitted).

The Supreme Court has determined our inquiry as follows:

> In nondisclosure cases, a party's silence amounts to representation where the law imposes a duty to speak. *Andes*, 853 S.W.2d at 943. 'Whether or not a duty to disclose exists ... must be determined on the facts of the particular case.' *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 720 (Mo.App. W.D.1995). A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other. *Andes*, 853 S.W.2d at 943. 'Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence.' *Bayne v. Jenkins*, 593 S.W.2d 519, 529 (Mo. banc 1980).
>
> Similarly, a jury is empowered to find that the buyer has a right to rely on the seller to disclose where the undisclosed material information would not be discoverable through ordinary diligence. *See Groothand v. Schlueter*, 949 S.W.2d 923, 930 (Mo.App. W.D.1997) (buyer may rely on seller where the facts are 'peculiarly within the knowledge' of seller and 'the truth is difficult for the buyer to ascertain'). Thus, in a case of fraudulent non-disclosure ... the analysis of proof of a duty to disclose and of the right to rely collapses into a combined inquiry as to whether [the seller] had knowledge of undisclosed material information that [the buyer] would not have discovered through ordinary diligence.

*Id.* at 765–66.

■ Mindful of *Hess*, we are simply not able to review Harris' claims because the exact characterization of the relationship between Harris and University cannot be ascertained from the record. This *fact* is crucial because under Missouri law different relationships carry with them different responsibilities and consequent duties.

For example, it appears to us that Harris and University were engaged in a commercial transaction. University was in the business of removing eggs from women, storing those eggs, and delivering them to the recipient for a fee. Harris was essentially in the business of providing eggs in exchange for financial compensation. Although the recipient, not Harris, actually paid for the medical procedure, Harris was still directly involved in this transaction as the eggs were ultimately removed from Harris before being delivered to the recipient. If this qualifies as a commercial transaction, then Missouri law provides at least five circumstances [1] in which Univer-

---

1. One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

   (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

   (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

   (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

   (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

   (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

sity may have been under a duty to disclose information when it in fact knew that other donors had not been paid. However, the record has had insufficient development by which we could reach this conclusion.

Alternatively, given the unconventional circumstances present in this case, it is also possible that Harris and University were not really involved in a commercial transaction, but the relationship was more akin to that of physician and patient with a consequent duty of informed consent. In relationships of trust and confidence, Missouri law imposes a duty to disclose information if one party (University) had superior knowledge or information not within the fair and reasonable reach of the other party (Harris). *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993). But again, the record does not disclose the exact nature of the relationship, so we cannot proceed with the appropriate analysis.

We do not mean to limit the proceedings on remand to deciding between the two examples discussed above.[2] The point is that the parties' relationships were never fleshed out, and the facts crucial to determining a duty were never set out in the statement of uncontroverted material facts with references to the pleadings, discovery, exhibits or affidavits showing the lack of a genuine issue as to these facts. Because there are genuine issues of material fact, and these facts are crucial to establishing whether University is entitled to judgment as a matter of law, we simply

cannot say that summary judgment was appropriate. Therefore, we reverse and remand for proceedings consistent with this opinion.

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., concur.

---

*Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 814 (Mo.App. E.D.2002) (citing § 551 of the Restatement 2d of Torts).

2. Though not addressed by the parties in their briefs, we foresee still other potential relationships between all parties that might impact University's liability to Harris. Based on the record before us, there is an indication that Mid–West was effectively soliciting business

for University by facilitating the parties and sending them to University for retrieval. If so, questions of agency undoubtedly arise. Additionally, any contract between Harris and Mid–West could have created a third-party beneficiary situation with University; or, Harris and University might have had an implied contract which could affect liability.