**SCOTT SALVAGE YARD, LLC, Respondent,**

v.

**Harvey L. GIFFORD, Appellant.**

**No. ED 97870.**

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 28, 2012.

Application for Transfer Denied Nov. 20, 2012.

---

1. All further references are to RSMo 2000 unless otherwise indicated.

Anthony DeWitt, Bartimus, Frickleton, Robertson & Gorny, P.C., Jefferson City, MO, for Appellant.

Robert V. Krueger, The Krueger Law Firm, L.L.C., Mexico, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Harvey Gifford ("Gifford") appeals from the trial court's judgment in favor of Scott Salvage Yard, LLC ("Scott"). A jury found Gifford liable to Scott for fraudulent inducement and awarded Scott both compensatory and punitive damages. The trial court entered a judgment accordingly. On appeal, Gifford asserts that the trial court erred in failing to dismiss Scott's claim of fraud or grant Gifford's motion for judgment notwithstanding the verdict because Scott's petition failed to state a claim. Gifford also argues that the trial court erred in submitting the issue of punitive damages to the jury because insufficient evidence exists to support an award of punitive damages. We find that Scott's petition states a claim for fraudulent inducement and sufficient evidence exists to support submission of the case to a jury on the issue of punitive damages. The judgment of the trial court is affirmed.

*Factual and Procedural History*

Viewed in the light most favorable to the verdict, the evidence established at trial is as follows. Gifford owns a vehicle salvage business. Scott operates a metal recycling business that provides the service of crushing vehicles using portable crushing machines. In August 2010, Gifford sought Scott's service to crush, transport, and recycle salvaged vehicles owned by Gifford and located on his salvage yard. Gifford represented to Scott that he had 1200 cars at his salvage yard, and that he wanted Scott to crush at least 1000 cars, in addition to a large amount of tin.

The parties agreed that Scott would pay Gifford $205 per ton based on Scott crushing 1530 or more tons of salvage from at least 1000 cars and other scrap at Gifford's salvage yard. The parties further agreed that Scott would tender Gifford a down payment of $25,000 at the beginning of the contract period, and that Gifford would hold, but not deposit, the down payment check until the final loads of crushed salvage were transported from Gifford's salvage yard. Scott separately contracted with a third-party recycler who agreed to pay Scott $235 a ton for 1500 tons of crushed salvage from approximately 1000 cars, if the salvage was delivered before the end of September 2010. Scott informed Gifford that all work needed to be completed and delivered to Scott's recycler within 30 days. Gifford assured Scott that Gifford would provide 100 or more cars per day in order to have all work completed within the time parameters set by Scott. Scott entered into the agreement with Gifford in reliance upon Gifford's representation that Gifford would provide the volume of salvage specified in the agreement. Scott tendered the $25,000 down payment. Shortly thereafter, in violation of the terms of the contract, Gifford deposited the down payment check.

On September 8, 2010, Scott traveled to Gifford's salvage lot with his portable crusher and began work. After the first few days of work, Gifford did not supply the required 100 cars per day for Scott to crush. By the fourth day after Scott began work at Gifford's salvage yard, Gifford was supplying only 20 to 30 cars per day. After the second week, Scott expressed his concerns to Gifford about Gifford's failure to provide the agreed volume of cars and the ability to meet the contract deadline.

On September 16, Scott paid Gifford $50,000 for cars crushed and recycled, despite not receiving a statement of the exact tonnage from the recycler. On September 17, after receiving a statement of previously recycled tonnage, Scott tendered to Gifford a second payment of $50,000. Gifford continued to provide Scott with fewer cars to crush than had been represented by Gifford. Scott again expressed concern to Gifford and stated that he needed Gifford to provide the number of vehicles promised in order for Scott to meet his contractual obligations to the third-party recycler.

Prior to September 20, Gifford contacted Scott and demanded that Scott tender a cash payment of $10,000. On September 20, Scott gave Gifford the demanded cash payment. Gifford signed a receipt acknowledging the $10,000 payment. The next day, Gifford demanded that Scott leave his property immediately. Scott informed Gifford that approximately 84 cars had been crushed but had not yet been loaded for transportation to the recycler. Gifford insisted again that Scott leave. When Scott refused to leave, Gifford had the sheriff escort Scott from the salvage yard. At the time Gifford evicted Scott from his property, Scott had received and crushed only one-third of the agreed upon vehicles and tonnage. Gifford did not allow Scott to complete the crushing of the salvage vehicles per their agreement.

Scott filed suit against Gifford claiming multiple theories of relief including breach of contract and fraud. The case was tried before a jury. Scott submitted only the fraud count to the jury, and abandoned the remaining counts to his petition. The jury found Gifford liable on the fraud claim and awarded Scott both compensatory and punitive damages. The trial court entered a judgment accordingly. Gifford now appeals.

## Point on Appeal

In his first point on appeal, Gifford asserts that the trial court erred in failing to dismiss Scott's petition or failing to grant judgment notwithstanding the verdict because Scott's petition failed to state a claim for fraud. In his second point, Gifford argues that the trial court erred in submitting the case to a jury on the issue of punitive damages because the record contains insufficient evidence to support an award of punitive damages.

## Standard of Review

We review *de novo* whether a petition states a claim. *Chochorowski v. Home Depot U.S.A., Inc.,* 295 S.W.3d 194, 197 (Mo.App. E.D.2009).

We review *de novo* whether the record contains sufficient evidence to support the trial court's submission of a punitive damages instruction. *Howard v. City of Kan. City,* 332 S.W.3d 772, 788 (Mo. banc 2011).

## Discussion

### I. Scott's petition states a claim for fraudulent inducement.

■ Gifford's first point on appeal is based upon the assertion that the petition does not state a claim for fraud. Gifford argues that the allegations of the petition allege only a breach of promise during a contract, which is not actionable as fraud. We disagree.

■ In determining whether a petition states a claim, "the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." *Doss v. Doss,* 822 S.W.2d 427, 428 (Mo. banc 1992) (internal citation omitted). We do not assess the merits of the case or consider evidence beyond the pleadings. *Richardson v. City of St. Louis,* 293 S.W.3d 133, 136 (Mo.App. E.D.2009).

■ To state a claim for fraud, the plaintiff must allege facts establishing: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of the truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury." *Harris v. Mid–West Egg Donation, LLC,* 365 S.W.3d 274, 276 (Mo. App. E.D.2012) (applying the elements to fraudulent misrepresentation); *see also Citizens Bank of Appleton City v. Schapeler,* 869 S.W.2d 120, 126 (Mo.App. W.D. 1993) (applying the same elements to fraudulent inducement).

While Gifford is correct in suggesting that the non-performance of a contractual promise during the pendency of a contract does not constitute fraud, Scott's petition alleges much more than unfulfilled contractual promises. Contrary to alleging a breach of promise, Scott's petition states a claim for fraudulent inducement. In his petition, Scott alleges the following:

42. The statements, promises and representations made by Defendants, as

aforementioned, were fraudulent misrepresentations of the truth whereby:

(a) Defendants misrepresented to Plaintiff that they would, during the month of September 2010, have ready and deliver to Plaintiff for crushing at least one thousand (1,000) motor vehicles, along with several scrap boats, tin, tires, assorted automobile motors, wheels and aluminum breakage, the majority of such items promised and agreed upon to be provided by Defendants they failed to perform and deliver to Plaintiff; and

*(b) Defendants knew at the time of conveying these promises, assurances and representations that they were false and would never be kept or honored; (emphasis added) and*

(c) Defendants' misrepresentations were material, and they convinced Plaintiff to pay $135,000.00 by September 21, 2010, and to provide uncompensated and non-contracted services, labor and personnel for the benefit of Defendants; and

(d) Defendants' misrepresentations were, in fact, false, and were not substantially fulfilled, were not honored or complied with as Defendants never substantially performed or completed their above-referenced promises, agreements and assurances as they did not provide and deliver the aforesaid quantities of scrap materials to be purchased and crushed by Plaintiff, all as promised, agreed and assured; and

*(e) Defendants' intention at the time of making these misrepresentations was for the purpose of inducing and enticing Plaintiff into agreeing to pay Defendants $135,000.00 and provide uncompensated labor and services to Defendants, for their sole benefit, all of which was designed to allow Defendants to obtain economic benefit and personal financial gain; (emphasis added) and*

(f) Plaintiff was totally ignorant and unaware of any information or knowledge which would have indicated or revealed the falsity of Defendants' representations, omissions and promises; and

(g) Plaintiff relied upon the truth and honesty of Defendants' representations, and had the right to such reliance in that Defendants had superior knowledge of the facts in question, and such representations caused Plaintiff to unknowingly take the detrimental actions aforementioned; and

(h) As a result of Plaintiff's reliance on such misrepresentations, Plaintiff has sustained and incurred direct and proximate harm and damages.

Scott's petition sufficiently alleges each element required to state a claim of fraudulent inducement. Scott alleges that Gifford intentionally misrepresented the number of cars he had available for crushing and that such fact was material to the contract. Scott further avers that Gifford knew at the time he made the assertion that the assertion was false and that Gifford intended the false assertion to induce Scott into the agreement. Scott also alleges that he was unaware of the falsity of the assertion, that he reasonably and rightly relied upon the false assertion, and that he was thereby damaged. Contrary to Gifford's argument, the petition alleges the necessary inducement that makes these representations actionable as fraud, even though said representations were made in the context of contractual negotiations. The factual allegations recited in the petition state a claim for fraud. *See Schapeler*, 869 S.W.2d at 126. Point denied.

## II. The trial court did not err in submitting the case on the issue of punitive damages.

In his second point on appeal, Gifford contends that the trial court erred in

submitting the case to a jury on the issue of punitive damages because insufficient evidence exists to support an award of punitive damages.

A case is submissible for punitive damages if the record contains "clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Howard*, 332 S.W.3d at 788 (internal citation omitted). A case is submissible for punitive damages if the evidence and inferences are sufficient to allow a reasonable juror to conclude that it was highly probable that the defendant's conduct was outrageous because of evil motive or reckless indifference. *Id.*

After reviewing the record, we find sufficient evidence to support the submission of punitive damages. The facts supporting the submission of punitive damages extend beyond a showing that Gifford induced Scott to enter into a contract based on a fraudulent misrepresentation. The record in this case also shows that Gifford quickly deposited Scott's $25,000 down payment check even though the terms of the agreement required that Gifford hold the down payment until the final shipments of crushed materials left his salvage yard. The record also shows that Gifford demanded, and received, a $10,000 cash payment from Scott, a payment Gifford demanded the day before he evicted Scott from the salvage yard and breached the agreement. The evidence further supports a finding that Gifford intentionally induced Scott to enter an agreement that was by its nature time-sensitive, and that Gifford knew that preventing Scott from completing the crushing of the vehicles promised would cause Scott to sustain financial losses with the third-party metal recycler. These facts constitute clear and convincing evidence sufficient to allow a reasonable jury to find that it was highly probable that Gifford's conduct was outrageous because of an evil motive. *See Howard*, 332 S.W.3d at 788. Accordingly, the trial court did not err in submitting the case to a jury on the issue of punitive damages. Point denied.

### Conclusion

The trial court did not err in not dismissed Scott's petition or denying Gifford's motion for judgment notwithstanding the verdict because the petition states a claim for fraudulent inducement. The trial court did not err in submitting the case to a jury on the issue of punitive damages because sufficient evidence exists to support an award of punitive damages. The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY and PATRICIA L. COHEN, JJ., concur.