Dale ANDERSON, John W.M. Carter, Ronald E. Gier, Dorsey J. Moore, Jon Birkenbaugh, Gary M. Ritchie, and Anton A. Vierthaler, Appellants,

v.

The CURATORS OF THE UNIVERSITY OF MISSOURI, and University of Missouri Retirement and Staff Benefits Committee, Respondents.

No. WD 61768.

Missouri Court of Appeals, Western District.

April 29, 2003.

Conway Leslie Hawn, Liberty, for Appellant.

Katharine Sue Bunn, Columbia, for Respondent.

PAUL M. SPINDEN, Judge.

Dale Anderson, John W.M. Carter, Ronald E. Gier, Dorsey J. Moore, John Birkenbaugh, Gary M. Ritchie, and Anton A. Vierthaler formerly were professors at the University of Missouri–Kansas City School of Dentistry. They appeal the circuit court's granting summary judgment in favor of the Curators of the University of Missouri and the university's Retirement and Staff Benefits Committee in the professors' declaratory judgment action against the university. The professors asked the circuit court to declare that payments that the professors received from the university in settlement of their age discrimination and retaliation lawsuit should be used in calculating the professors' retirement benefits. The circuit court concluded that the professors had agreed that the settlement payments would not be included in calculations of their retirement benefits and that they had settled all claims against the university and contracted away their claim to include the settlement payments in their retirement calculations. We reverse the circuit court's judgment and remand for further proceedings.

During the professors' employment at the university, they filed, against the university and the dean of the dental school, charges of age discrimination and retaliation with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. After the EEOC and MCHR gave the professors notice that they could pursue legal action, the professors filed separate lawsuits against the university and dean alleging age discrimination, retaliation and violation of constitutional rights. In their petitions, the professors requested that the universi-ty make them whole for the loss of income they suffered as a result of the university's unlawful discriminatory employment practices by paying back pay, compensation for substandard wage increases, reimbursement of any retirement and social security contributions, all other monetary compensation, including prejudgment interest, for damages suffered, compensation for mental and physical pain, suffering, anguish and distress, and compensation for damages to professional stature and reputation. The university removed the professors' petitions to the federal court and consolidated the lawsuits. After removal to the federal court, the parties engaged in settlement negotiations.

The professors later entered into separate settlement agreements and mutual releases with the university and the dean. Each of the settlement agreements contained this representation by the university:

> The University warrants and represents that the lump sum payment referenced in paragraph 1.A. for back wages does not fit the definition of "compensation paid for services regularly rendered, excluding incentive compensation, whether paid on the basis of an annual salary or any other basis, but including any amounts paid as a shift differential" as those terms are used in the University Retirement Plan.

The settlement agreements also contained a release of claims by each of the professors, which said:

> [The professor] hereby covenants and agrees that in consideration of the terms of this Agreement, he waives, fully releases and forever discharges the University, its Board of Curators and members thereof, its officers, employees, and agents, including without limitation Dean Michael J. Reed, of and from any and every claim, demand, and cause of

action of whatsoever nature which he now has, or may in the past have had, whether known or unknown, up to and including the date of the signing of this Agreement, against the University, its Board of Curators and members thereof, its officers, employees, and agents, including without limitation Dean Michael J. Reed, or any of them, including but not limited to, any and every claim, demand and cause of action for or on account of [the professor's] employment as a faculty member at the University of Missouri–Kansas City School of Dentistry and including any alleged claims of discrimination brought under the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1964, the Missouri Human Rights Act, or certain provisions of federal law including the U.S. Constitution, and also including claims for costs or damages of any and every nature, including attorney's fees, allegedly sustained by or accruing to [the professor] in connection with his employment by the University up to the date of the signing of this Agreement. Notwithstanding the foregoing, the parties agree that nothing herein shall affect or release any rights to pension, 403(B) or retirement benefits, which [the professor] has and which were vested as of the effective date of this Agreement.

Because each of the professors had been employed long enough to be considered a "qualified member" of the university's retirement plan, Anderson, Gier, Birkenbaugh, Ritchie, and Vierthaler, after settling their cases with the university, submitted applications for retirement benefits. The university approved these applications in August 1999. The following year, in April and December respectively, Moore and Carter submitted their applications for retirement benefits, which the university also approved.

After receiving each of the professors' applications for retirement benefits, the university calculated the retirement benefits to which each professor was entitled. The university took each professor's average salary of the five consecutive years during which the member's salary was the highest (called the "final average salary") and multiplied the number by the professor's years of service with the university and by a predetermined factor. The resulting figure was the annual retirement benefit due the professor.

The university's plan mandated that "the [s]alary of a [m]ember shall include compensation paid for services regularly rendered, excluding incentive compensation, whether paid on the basis of an annual [s]alary or any other basis, but including any amounts paid as a shift differential." University of Missouri Retirement, Disability and Death Benefit Plan, § 530.010(D)(1)(a). When the university calculated each professor's "final average salary," it did not include any of the proceeds that the professors had received from settling their lawsuits with the university.

Anderson, Gier, Birkenbaugh, Ritchie, and Vierthaler appealed this decision to the university's Retirement and Staff Benefits Committee, and the committee denied their appeals. The professors then appealed to Manuel T. Pacheco, the university's president, who affirmed the committee's decision, and stated that Anderson, Gier, Birkenbaugh, Ritchie, and Vierthaler had exhausted all administrative remedies. On November 7, 2000, Anderson, Gier, Birkenbaugh, Ritchie, and Vierthaler filed a petition for declaratory judgment with the circuit court. They requested that the circuit court declare the term "salary" as defined in the university's retirement plan

include the settlement payments they received from the university. On June 15, 2001, the professors filed an amended petition, with the university's consent, to include Carter and Moore because the issues involving the calculation of their retirement benefits involved the same controversy. Thereafter, the parties filed a joint stipulation of facts with the circuit court and cross motions for summary judgment.

On July 9, 2002, the circuit court entered summary judgment for the university. The professors appeal from that judgment. The professors contend that the circuit court erred in concluding that they expressly agreed that the settlement payments would not be included in the calculation of their retirement benefits.

Our review of the circuit court's summary judgment is essentially de novo. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the evidence in the record in the light most favorable to the party against whom the circuit court ruled. We endeavor to do this by accepting only inferences in the evidence that favor the party against whom the circuit court ruled. *Id.* Before a circuit court can enter summary judgment, it must determine that the parties are not disputing any genuine issues of material fact and that the party seeking summary judgment is entitled to a judgment as a matter of law. *Id.* at 377; Rule 74.04(c)(3). Because summary judgment is "an extreme and drastic remedy," we exercise great caution in affirming a summary judgment because the procedure implicates the denial of due process by denying an opposing party his day in court. *ITT*, 854 S.W.2d at 377.

Although the settlement agreements contained the university's "warranty" and "representation" that the lump sum settlement payments did not fit the definition of "compensation paid for services regularly rendered, excluding incentive compensation, whether paid on the basis of an annual salary or any other basis, but including any amounts paid as a shift differential" as those terms are used in the university retirement plan, nothing within the settlement agreements established that the professors "expressly agreed," as the circuit court found, with the university's representation. The "warranty" and "representation" was only the university's view of the matter. Nowhere in the settlement agreement do the professors express agreement with the university's view.

The circuit court, however, also found that the professors had settled all claims against the university and had expressly contracted away their claim to include the settlement payments in their retirement calculations. In their settlement agreements, the professors agreed to:

> [W]aive[ ], fully release[ ], and forever discharge[ ] the University, its Board of Curators and members thereof, its officers, employees, and agents, including without limitation Dean Michael J. Reed, of and from any and every claim, demand, and cause of action of whatsoever nature which [they] now ha[ve], or may in the past have had, whether known or unknown, up to and including the date of the signing of this Agreement, against the University[.]

The university contends that this release constituted a general release and, therefore, disposed of all claims, including the professors' claims regarding retirement benefits. It asserts that the professors failed to reserve their right to claim that the settlement payments should be included in their calculation of their retirement benefits.

"A general release 'disposes of the whole subject matter or cause of action

involved.' " *Blackstock v. Kohn,* 994 S.W.2d 947, 954 (Mo. banc 1999) (citation omitted). A general release uses language such as " 'from any and all claims, causes of action or liability of any sort whatsoever[,]' " *id.,* " 'from any and all liability,' 'of whatever name or nature,' and 'any other matter whatsoever involving my relationship with [the entity,]' " *Estate of Givens v. United States National Bank of Clayton,* 938 S.W.2d 679, 682 (Mo.App.1997) (citation omitted). Although the settlement agreement's language noted above appeared to provide a "general release," this reading is contradicted by the sentence that appeared after the release: "Notwithstanding the foregoing, the parties agree that nothing herein shall affect or release any rights to pension, 403(B) or retirement benefits, which [the professor] has and which were vested as of the effective date of this Agreement." The issue is whether this phrase reserved the professors' rights to claim that the settlement payments should be included in the calculation of their retirement benefits.

■■■ A party may limit or restrict a general release by expressing such intent in the general release. To retain legal rights relating to the dispute, the professors must have expressly reserved such rights in the settlement agreement. *Sexton v. First National Mercantile Bank and Trust Company of Joplin,* 713 S.W.2d 30, 31 (Mo.App.1986). "In the absence of words in the operative part of a general release which indicate an intention to limit or restrict its effect, it must be concluded that the instrument was contemplated and intended to be a complete settlement of all matters between the parties to the release." *Lugena v. Hanna,* 420 S.W.2d 335, 341 (Mo.1967). Hence, we must determine whether the last sentence of the release limited the effect of the general release and reserved the professors' rights to

claim that the settlement payments should be included in the calculation of their retirement benefits.

■■■ Principles applicable to contractual agreements govern our interpretation of the professors' releases or settlement agreements, *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. banc 1993), and our primary goal is to enforce the parties' intended agreement. *Baker–Smith Sheet Metal, Inc. v. Building Erection Services Company,* 49 S.W.3d 712, 715 (Mo.App. 2001). Questions regarding the scope and extent of the release should be resolved " 'according to what may fairly be said to have been within the contemplation of the parties at the time the release was given[, which], in turn, is to be resolved in light of all the surrounding facts and circumstances under which the parties acted.' " *Id.* at 715–16 (quoting *Andes,* 853 S.W.2d at 941).

■■■ Where the language used in the release is plain and unambiguous, we will determine the parties' intent based on the release's language and not based on parol or extrinsic evidence. If, however, the release is ambiguous and we have to resort to parol evidence to determine that intent, a question of fact arises as to the intent of the parties. *Id.* at 716; *Tuttle v. Muenks,* 21 S.W.3d 6, 9 (Mo.App.2000). The determination of whether release is ambiguous is a question of law, *Baker–Smith,* 49 S.W.3d at 716, and summary judgment is appropriate only when the release is unambiguous on its face. *See Lupo v. Shelter Mutual Insurance Company,* 70 S.W.3d 16, 18 (Mo.App.2002), and *J.H. Berra Construction Company, Inc. v. Missouri Highway and Transportation Commission,* 14 S.W.3d 276, 279 (Mo.App. 2000).

The professors assert that they unequivocally and unambiguously reserved their right to retirement benefits, including all

rights regarding how those benefits were to be calculated by including the "notwithstanding" clause in the release: "Notwithstanding the foregoing, the parties agree that nothing herein shall affect or release any rights to pension, 403(B) or retirement benefits, which [the professor] has and which were vested as of the effective date of this [a]greement."[1] This clause, however, is susceptible to two different meanings. It could mean that the settlement agreements and their payments had no bearing whatsoever on the professors' rights to retirement benefits, which would mean that the settlement proceeds would not be included in the retirement calculation. Another, equally plausible meaning for the clause is that the settlement agreements would not in anyway alter the professors' rights to claim the settlement proceeds as part of the calculation for their retirement benefits.

 An ambiguity in a contract arises when its terms are susceptible to fair and honest differences or " 'when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract.' " *Baker–Smith*, 49 S.W.3d at 716

(quoting *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo. banc 1996)). Because the "notwithstanding" clause is ambiguous on its face, a genuine issue of material fact exists in regard to the intent of the parties, and the circuit court should not have granted summary judgment in favor of the university.[2]

The university claims that, even if the professors reserved their rights to claim that the settlement payments should be included in the calculation of their retirement benefits, the payments were not "compensation paid for services regularly rendered" as defined in the university's retirement plan. The university, however, acknowledged in the settlement agreements that the lump sum payments were for "back wages," that the professors received Internal Revenue Service form W–2s from the university that reflected that local, state, and federal taxes had been taken out of the back wages that they had received from the university as part of their settlement, and that the settlement payments had been classified as "wages, tips or other compensation" by the university. At a minimum,[3] therefore, genuine

1. The university asserts that the "notwithstanding" clause simply provides that the professors do not release their retirement benefits which had vested at the time of the settlement. We disagree. We concur with the professors that "vested" modifies "rights" and not "benefits."

2. Because a genuine issue of material fact remains as to whether the professors reserved their rights to claim that the settlement payments should be included in the calculation of their retirement benefits, we need not address the university's assertion that the professors should be estopped from asserting their claims.

3. The professors also argue that the definition of salary—"[t]he Salary of a Member *shall include* compensation paid for services regularly rendered, excluding incentive compensation, whether paid on the basis of an annual

Salary or any other basis, but including any amounts paid as a shift differential"—is an expansive definition. They assert that the definition includes not only "compensation paid for services regularly rendered" but also "*shall include*" compensation paid by the university that is not excluded by the limited exceptions set forth in the definition. In essence, they argue that the term "shall include" is not a word of limitation but rather of enlargement. The circuit court found that the professors had "expressly agreed that the settlement funds would not constitute 'compensation paid for service regularly rendered[,]' " and followed it with a statement that it was "a definition essential for statutory inclusion in the retirement calculation." If the professors reserved their rights to claim that the settlement payments should be included in the calculation of their retirement benefits, the circuit court must determine to

issues of material fact would exist concerning to what extent and amount the settlement payments constituted "compensation for services regularly rendered," if the professors reserved their rights to claim that the settlement payments should be included in the calculation of their retirement benefits.

We, therefore, reverse the circuit court's judgment and remand for further proceedings.

RONALD R. HOLLIGER, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.

what extent—if at all—the settlement pay-

ments should be included in that calculation.