Louis N. GOLDRING, et al., Respondents,

v.

FRANKLIN EQUITY LEASING CO., Appellant.

No. ED 87004.

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 2006.

Michael Morgan Godsy, St. Louis, MO, for appellant.

Jeffrey Brian Hunt, St. Louis, MO, for respondent.

BOOKER T. SHAW, J.

Franklin Equity Leasing Co. ("Employer") appeals from the trial court's grant of summary judgment in favor of Louis N. Goldring ("Employee") and Frank Susman, Trustee of the Goldring Family Irrevocable Trust dated November 24, 1998 ("Trust"), on their claim for declaratory judgment. We affirm.

### Facts and Procedural History

On September 1, 1992, Employee and Employer simultaneously entered into a "Split Dollar Agreement" (the "Agreement") and "Assignment of Life Insurance Policies as Collateral" (the "Assignment"). At the time these contracts were entered into, Employee was employed by Employer. The Agreement provided that Employer would pay the annual premiums of two insurance policies insuring the life of Employee. In return, pursuant to the Agreement, Employer obtained "the unqualified right to receive a portion of [the policies'] death benefit[s] equal to the total amount of the premiums paid [by Employer]." The Agreement also provided that Employee "shall have the right to absolutely and irrevocably give to a donee all of his right, title and interest in and to the [p]olic[ies], subject to the collateral assignment of the [p]olic[ies] to [Employer]...." Employee exercised this right in October 2001, when he changed the owner and beneficiary of the policies to the Trust.

The Assignment served as the collateral for the loans made under the Agreement. It provided Employer with "[t]he right to collect from the Insurer[s], to the sole extent of its interests in the [p]olicy, the net proceeds of the [p]olicy when it becomes a claim by death or maturity." It also provided that the Assignment "[could] not be terminated, altered, or amended by [Employee], without [the] express written consent of [Employer]."

On November 10, 1997, Employee and Employer entered into a "Private and Confidential Separation Agreement and General Release" (the "Release"), terminating Employee's employment with Employer on October 31, 1997. In the Release, Employee released Employer from any obligation to provide "employment benefits." Shortly thereafter, a dispute arose between Employee and Employer as to whether Employer was obligated under the Agreement to continue paying the life insurance premiums. Ultimately, Employer ceased making these payments.

On June 23, 2004, Employee and the Trust filed a two-count petition in the trial court against Employer seeking damages for breach of contract and a declaratory judgment regarding the Agreement, the Assignment and the Release. Employer answered and asserted as an affirmative defense that the Release barred any recovery under the Agreement. Employee and the Trust then filed an amended petition, which added a third count seeking alternative relief for declaratory judgment based on the argument that the Release discharged and terminated all duties, obligations, rights and benefits among the parties under the Agreement and the Assignment. Subsequently, Employee and the Trust filed their motion for summary judgment, arguing that the Release terminated all the duties, obligations, rights and benefits between the parties. The trial court granted summary judgment in favor of Employee and the Trust on Count III of their amended petition.[1] Employer appealed.

### Analysis

On appeal, Employer argues the trial court erred in granting summary judgment in favor of Employee and the Trust because: (1) the Release did not terminate Employer's right to obtain reimbursement from the insurance proceeds as the Release did not contain Employer's express written consent for such a termination; (2) the Release is irrelevant to Employer's right to reimbursement under the Assignment for insurance premiums it paid because no claims were possible against Employee under the Assignment, and Employee's insurers were not released from their obligations to reimburse Employer; and (3) Employee has no standing to pursue this action because he transferred all of his interests in the relevant contracts to the Trust and because the Trust could not have obtained any protectable interest in the litigation. We affirm.

■ We will address Employer's point regarding standing first because it raises the issue of our jurisdiction. Our review

---

1. We note that the trial court did not specifically dispose of Counts I and II of Employee and the Trust's amended petition in its judgment. However, in finding for Employee and the Trust on Count III of their amended petition for declaratory judgment, the trial court implicitly ruled on their Counts I and II. "If a judgment, by implication, necessarily carries with it a finding upon other counts, the judgment will be sustained as final even though the count is not specifically mentioned." *Village Lutheran Church v. City of Ladue*, 997 S.W.2d 506, 508 n. 1 (Mo.App. E.D.1999); *Jefferson v. American Financial Group, Inc.*, 163 S.W.3d 485, 488 n. 2 (Mo.App. E.D. 2005).

of whether Employee and the Trust have standing to pursue this litigation is *de novo*. *Home Builders Assn. of Greater St. Louis, Inc. v. City of Wildwood*, 32 S.W.3d 612, 614 (Mo.App. E.D.2000). We determine standing as a matter of law on the basis of undisputed facts. *Id.*

"Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve School District R–II v. Board of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002). A party to a contract or a third-party beneficiary has standing to enforce an agreement. *General Motors Acceptance Corp. v. Windsor Group, Inc.*, 2 S.W.3d 836, 839 (Mo.App. E.D.1999). A third-party beneficiary is "one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. banc 1993) (internal citation omitted). In the context of a general release, the Missouri Supreme Court has held that those persons for "whose benefit the agreement was made ... would have standing to enforce the release and to raise the defense of release to the present action." *Id.*

Here, Employee, as a party and signatory to the Agreement, Assignment and Release, certainly has an interest in the execution and interpretation of agreements entered into by him. *See General Motors*, 2 S.W.3d at 839. Also, the Trust, as the beneficiary of the insurance policies that are the subject of the agreements, has an interest in the execution and interpretation of these agreements. *See id.* at 839–40. Finally, the Trust is a third-party beneficiary of both the Agreement and the Release. *See Andes*, 853 S.W.2d at 942. Therefore, these parties have standing to bring this litigation and Employer's point III is denied.

In Employer's remaining two points on appeal, it argues the trial court erred in granting summary judgment because the Release is irrelevant to Employer's right to reimbursement under the Assignment, Employee's insurers were not released from their obligations under the Assignment, and the Release did not terminate Employer's right to obtain reimbursement from the insurance proceeds as the Release did not contain Employer's express written consent for termination. Because we find the broad language of the Release extinguished all of the parties' rights and obligations under the Agreement and the Assignment, Employer's arguments fail.

When considering an appeal from the grant of summary judgment, this Court's review is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate only if (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *See ITT Commercial*, 854 S.W.2d at 376. We view the facts in the light most favorable to the non-moving party, giving it the benefit of all the reasonable inferences available in the record. *ITT Commercial*, 854 S.W.2d at 376.

The interpretation of settlement or release agreements, like all contracts, is a question of law. *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. App. E.D.2000). "The law presumes that a release is valid." *In the Matter of the Liquidation of Professional Medical Insurance Co. v. Lakin, et al.*, 88 S.W.3d 471, 476 (Mo.App. W.D.2002). A general release disposes of the entire subject matter

involved. *Anderson v. Curators of the University of Missouri,* 103 S.W.3d 394, 398–99 (Mo.App. W.D.2003). "A party may limit or restrict a general release by expressing such intent in the general release ... [and] must have expressly reserved such rights in the settlement agreement." *Id.* at 399. If a party fails to do so, the agreement will be interpreted to be a complete and final settlement of all the matters between the parties to the release. *Id.*

Here, the Release specifically provides:

4. [Employee] ... forever discharges [Employer] ... from any and all actions, charges, causes of action or claims of any kind ... known or of which he should have known about prior to the effective date of this [Release], which he ... may have against [Employer] arising out of any matter, omission, occurrence or event existing or occurring prior to ... this [Release] ... including, without limitation: any claims relating to or arising out of his employment with and/or termination of employment with [Employer] ...; any claims for ... severance pay, benefits, bonuses and/or other compensation of any kind....

. . .

17. [Employer] ... releases and forever discharges [Employee] from any and all actions, charges, causes of action or claims of any kind ..., known or of which [Employer] should have known about prior to the effective date of this [Release], which [Employer] ... may have against [Employee] arising out of any matter, omission, occurrence or event existing or occurring prior to ... this [Release], including, without limitation: any claims relating to or arising out of [Employee']s employment with

and/or termination of employment with [Employer] and/or any common law claims, now existing or hereafter recognized, such as breach of contract, libel, slander, fraud, promissory estoppel, breach of implied covenant of good faith and fair dealing, misrepresentation or wrongful discharge; provided, however, that the foregoing release of claims shall expressly not apply to any promises and obligations of [Employee] set forth in this [Release], including but not limited to those set forth in Section 5.

We find the broad language of the Release unambiguously and clearly terminated all existing and enforceable rights and obligations under the parties' Agreement and Assignment. Specifically, the Release discharged Employer from "any and all ... claims ... including, without limitation: any claims relating to or arising out of his employment with and/or termination of employment with Employer." Employer's right to reimbursement of insurance premiums it paid while Employee was its employee falls squarely within this express Release language. Had Employer's intent been otherwise, it could have carved out an exception to the Release, i.e., for the effectiveness or obligations of the parties' Agreement and Assignment, as it had done for Section 5 thereof.[2] Therefore, because we find the Release terminated all the rights and obligations between the parties, Employer's remaining points on appeal are denied.

### Conclusion

The trial court's grant of summary judgment in favor of Employee and the Trust is affirmed.

AFFIRMED.

---

2. Specifically, the Release provided for the following exception, which stated, "the foregoing [Release] shall expressly not apply to

any promises and obligations of [Employee] set forth in this [Release], including but not limited to those set forth in Section 5."

KATHIANNE KNAUP CRANE, P.J.,
and LAWRENCE E. MOONEY, J.,
Concur.