In re the Marriage of Mary Ann CHADWICK, Petitioner–Appellant,

v.

Charles Don CHADWICK, Respondent–Respondent.

No. 28725.

Missouri Court of Appeals, Southern District, Division Two.

June 24, 2008.

Motion for Rehearing or Transfer Denied July 14, 2008.

Application for Transfer Denied Aug. 26, 2008.

Larry K. Bratvold, Springfield, MO, for appellant.

Robert M. Sweere, Springfield, MO, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Mary Ann and Charles Chadwick entered into a Property Settlement and Separation Agreement in April of 2004; the court entered a Judgment of Dissolution of Marriage and incorporated the Settlement Agreement. Unfortunately, the Settlement Agreement and the Judgment of Dissolution of Marriage are not consistent in the treatment of Charles'[1] service pension with the City of Springfield Fire Department. Mary Ann claims that the service pension was marital property and divided at the time of the dissolution and the payout provisions were simply a proportion of the total award; Charles claims the service pension was maintenance and, thus, by law terminated in the event of Mary Ann's remarriage. Mary Ann is remarried. The trial court entered summary judgment for Charles, finding that the pension was maintenance as a matter of law. We disagree and find that the Judgment and the incorporated Property Settlement and Separation Agreement contain ambiguous terms which necessitate a trial on the intent of the parties at the time of the dissolution as to whether the pension was a division of marital property or whether it was maintenance. Granting of a summary judgment is purely a question of law; therefore, appellate review of a grant of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

An introductory paragraph on page 1 of the Property Settlement and Separation Agreement states:

WHEREAS, it is further agreed that 16/25 (64%) of Husband's pension rights/benefits from his employment as a member of the City of Springfield Fire Department is marital property but that it is further understood and believed by the parties however, that said pension rights/benefits are not divisible by a Qualified Domestic Relations Order because such pension is not subject to ERISA[.]

1. We refer to the parties by first names for ease of discussion only and intend no disrespect by using this convention.

Paragraph 5 on the Property Settlement and Separation Agreement states:

5. **Springfield Fire Dept. pension.** It is agreed that Husband is a retiree of the City of Springfield Fire Department and receives a monthly pension benefit from said prior employment. It is agreed that 16/25th of said pension retirement benefit is marital property and that 9/25th of said benefit is Husband's non-marital property. In the judgment dissolving the marriage, said pension benefit shall be divided as follows: 8/25 to Wife and 17/25 to Husband. Commencing with the first monthly benefit received after the entry of the judgment dissolving the parties' marriage Wife shall be entitled to 8/25 of each such monthly benefit. Hence, upon receipt of a monthly pension benefit from the City of Springfield, the designated escrow recipient thereof will forthwith photocopy the documentation indicating receipt of such benefit. The escrow recipient will then forthwith mail to Wife's last known address a good check for 8/25 of the monthly benefit received along with the photocopy of such documentation and a like photocopy and the balance of the benefit received to Husband's last known address. Wife's right to such fractional portion of each monthly benefit shall terminate upon the death of Husband. Because the pension is not subject to a QDRO, it is expected that the Form 1099 for such benefit will continue to come in Husband's name. For tax purposes only, Wife's 8/25's of said benefit shall be denominated as maintenance and deductible from Husband's gross income and taxable to Wife.

Paragraph 7 of the Property Settlement and Separation Agreement states:

7. HUSBAND shall be awarded the following as his portion of the remaining non-marital and marital property: White Chapel burial lots and plan, Prudential policy on his life, debts of Caffey, Barbee, and Altic, 1997 Buick, 1993 Chevrolet Astro Van, Trailer, Shelter Insurance claim check in the sum of $3,286.73 (pertaining to 3025–3027 N. Pickwick); all other personal property currently in his possession or titled solely in his name or in his name and others, all property titled in the Revocable Living Trust Agreement of Charles Don Chadwick and Mary Ann Chadwick dated August 2, 1988 or located at the duplexes not explicitly awarded to Wife; his personal effects and clothing, all bank and financial accounts solely in his name or under his control (and the contents thereof), and all other benefits including pension and retirement benefits, if any, available to him through any employment (excepting the aforesaid Fireman's pension benefit).

Paragraph 12 of the Property Settlement and Separation Agreement states:

12. It is mutually agreed that each party hereby waives the rights against the other for maintenance, either periodic or in gross, either statutory or contractual, and hereby represents to the other that by making such waiver, they are aware that they will not be able to assert a claim against the other for maintenance, either periodic or in gross, in the future, and so agreeing, the parties acknowledge that neither spouse lacks sufficient property, including marital property apportioned to him or her, to provide support to himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. The judgment dissolving the parties' marriage shall provide that said agreement as to "no maintenance" shall be non-modifiable.

Paragraph 8 of the Judgment of Dissolution of Marriage states:

8. Wife is entitled to a value equivalent to 8/25 of Husband's Pension with the City of Springfield Fire Department from and after April 30, 2004. Since said Pension is not subject to being divided, the parties have agreed that Wife is in need of periodic maintenance equal to 8/25 of the monthly benefit payable and actually received by [H]usband during his lifetime, said maintenance to cease upon Husband's death. In the event that Wife predeceases Husband, the parties have agreed that 8/25 of the monthly Pension benefit payable to Husband shall be paid to Wife's designee after Wife's death. Payment of 8/25 of Husband's pension after the death of Wife shall continue to be paid to Wife's designee in the nature of maintenance, so that Husband shall be entitled to a tax deduction for all such sums paid and Wife, her estate, or designee shall be required to declare all such sums paid by Husband as taxable income.

Paragraph 5 of the Judgment includes the following order:

5. It is ORDERED, ADJUDGED and DECREED that Wife shall receive on a monthly basis a value equivalent to 8/25 of Husband's Pension with the City of Springfield Fire Department from and after April 30, 2004, in the nature of maintenance to cease upon Husband's death. In the event that Wife predeceases Husband, 8/25 of the monthly Pension benefit payable to Husband shall be paid to Wife's designee after Wife's death. Payment of 8/25 of Husband's pension after the death of Wife shall continue to be paid to Wife's designee in the nature of maintenance, so that Husband shall be entitled to a tax deduction for all such sums paid and Wife, her estate, or designee shall be required to declare all such sums paid by Husband as taxable income.

Paragraph 6 of the Judgment includes the following order:

6. It is ORDERED, ADJUDGED and DECREED that subject to requirement of Respondent Husband to pay to Petitioner Wife or her designee a sum equivalent to 8/25 or each monthly benefit from his City of Springfield Fire Department Pension after April 30, 2004 until his death, Petitioner and Respondent shall each retain any retirement accounts, retirement benefits or qualified accounts in their individual names, free from any claims of the other, and this Court shall retain jurisdiction over this issue to make such other orders and judgments, including a Qualified Domestic Relations Order, as shall be required by the administrator of each such account or plan to give effect to this Order, should the same be required.

■ The only thing clear about the Judgment and the incorporated Settlement Agreement is that it is not clear. In the introduction, the pension is clearly declared to be marital property. In paragraph 5, it is again declared to be marital property and the proper proportions are set forth as if it were a division of marital property; however, the parties then state because the pension cannot be divided by a Qualified Domestic Relations Order that, "[f]or tax purposes only," the benefit "shall be denominated as maintenance and deductible from Husband's gross income and taxable to Wife." Thus, the concept of "maintenance" is then added to the character of the pension benefits, albeit for a limited purpose.

Contrary to the assertion that the pension is some kind of "maintenance," in the Property Settlement and Separation Agreement, the parties specifically waive their right to any kind of maintenance and

state that it will be "non-modifiable." In paragraph 7, a portion of the pension and retirement benefits are awarded to Charles as property, but in the Judgment, the parties muddy the water by referring to Mary Ann's portion of the pension as "periodic maintenance." The provision is not treated as traditional maintenance though because a formula is devised to give Mary Ann's portion to Mary Ann's designee in the "event that Wife predeceases Husband," but it continues to refer to that portion as "in the nature of maintenance." Likewise, the Judgment later indicates that Mary Ann's portion is "in the nature of maintenance."

When Mary Ann remarried, Charles stopped paying her the 8/25th of the pension. The court granted Charles' motion for summary judgment, which simply consisted of the uncontroverted fact that the Property Settlement and Separation Agreement and Judgment were entered in April of 2004, and that Mary Ann had remarried. Charles argued that, as a matter of law, the payment terminated. Implicit in that argument must be a finding that the provision is a maintenance provision and not marital property. There is no factual basis in the motion for summary judgment to make that finding. The Judgment and the incorporated Settlement Agreement could not be more ambiguous whether the pension was intended to be divided as marital property or was intended to be maintenance. There is a genuine issue of material fact.

▄▄▄ The propriety of granting summary judgment in this case turns upon the construction of a contract between the parties that consisted of a Property Settlement and Separation Agreement and an agreed upon Judgment of Dissolution of Marriage.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). Where the parties have expressed their final and complete agreement in writing and there is no ambiguity in the contract, the intent of the parties must be determined solely from the four corners of the contract itself. *Mid Rivers Mall, L.L.C. v. McManmon,* 37 S.W.3d 253, 255 (Mo. App. E.D.2000). But if the terms of the separation agreement are ambiguous, then the court may refer to matters beyond the face of the document itself. *See Erwin v. City of Palmyra,* 119 S.W.3d 582, 585 (Mo.App. E.D.2003).

*Eveland v. Eveland,* 156 S.W.3d 366, 368–69 (Mo.App. E.D.2004). Summary judgment, therefore, is only appropriate in contract cases where there is no ambiguity and the apparent meaning of contract terms can be determined within the four corners of the document. *National Merchandising Corp. v. McAlpin,* 440 S.W.2d 489, 494 (Mo.App.Spfld.D.1969). If the language of the contract is ambiguous, the propriety of a summary judgment is questionable. *Id.* Moreover, where the contract is ambiguous, the intent of the parties must be established by extrinsic evidence and so a question of fact arises as to the intent of the parties to its meaning; thus, it is error to grant summary judgment. *MECO Systems, Inc. v. Dancing Bear Entertainment, Inc.,* 948 S.W.2d 185, 191 (Mo.App. S.D.1997). Summary judgment tests simply for the existence, not the extent of, the genuine issues of fact to be determined. Where the trial court must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment in order to grant summary judgment, summary judgment is not

proper. *ITT Commercial Fin. Corp.*, 854 S.W.2d 371, 378.

The judgment granting summary judgment is reversed and remanded for a trial on the issues.

BARNEY, P.J., BURRELL, J., concur.