**AMUSEMENT CENTERS, INC., Texas Cattle Corporation, Donald E. Feese, Plaintiffs–Appellants,**

v.

**CITY OF LAKE OZARK, Gary Weber, and Herbert Llewellyn, Defendants– Respondents.**

No. 28253.

Missouri Court of Appeals, Southern District.

Aug. 27, 2008.

Motion for Rehearing and Transfer to Supreme Court Denied Sept. 18, 2008.

John M. Waldeck, Leawood, KS, for Appellants.

Diana C. Carter, Jefferson City, MO, for Respondents.

JEFFREY W. BATES, Judge.

This is an appeal from a summary judgment granted in favor of defendant City of Lake Ozark (Lake Ozark) and against plaintiffs Amusement Centers, Inc. (ACI), and Texas Cattle Corporation (TCC). Because there is a genuine issue of material fact that requires a trial, the judgment is reversed and the cause is remanded for further proceedings.

## I. Standard of Review

In determining whether the trial court properly granted summary judgment, this Court employs a *de novo* standard of review. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo.App.2007). The trial court's decision to grant summary judgment is entitled to no deference. *Murphy v. Jackson Nat'l Life Ins. Co.*, 83 S.W.3d 663, 665 (Mo.App.2002). Instead, this Court uses the same criteria the trial court should have employed in initially deciding whether to grant Lake Ozark's motion. *Stormer v. Richfield Hospitality Services, Inc.*, 60 S.W.3d 10, 12 (Mo.App.2001). A summary judgment cannot be granted unless the motion, response, reply and sur-reply demonstrate that there is no genuine issue as to any material fact. Rule 74.04(c)(6); *Lindsay v. Mazzio's Corp.*, 136 S.W.3d 915, 919 (Mo.App.2004).[1] "A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist." *Contract Freighters, Inc. v. Fisher*, 13 S.W.3d 720, 722 (Mo. App.2000).

## II. Factual and Procedural Background

The parties prepared a joint stipulation of facts to support their cross-motions for summary judgment. The statement of facts set forth below is drawn from the stipulation, its attached exhibits and one diagram that the parties agreed should be made part of the record on appeal.

In 1931, the State of Missouri purchased certain real estate for the purpose of constructing Highway 54 in Miller County, Missouri. In 1991, the State conveyed part of this real estate to Lake Ozark by quitclaim deed. The property acquired by Lake Ozark included a strip of land (the Disputed Land) approximately 530 feet long whose northern boundary began at the centerline of Highway 54 and extended southward 75 feet. A parking area and sidewalk were constructed on the Disputed Land. These structures began at the southern edge of Highway 54 and extended further south approximately 30 feet. The public used these structures, which were maintained by Lake Ozark. The public also used the portion of the Disputed Land that lies within the roadbed of Highway 54, and Lake Ozark maintained the road.

In 1996, ACI and Two–Bit Town, Inc., filed a federal lawsuit against Lake Ozark. The federal litigation involved Valley Road, which was located approximately 600 feet south of and generally parallel to Highway 54. In 1998, the parties settled this litigation and executed a mutual release (the Release). The Release stated that "[t]he undersigned expressly understand that this Release does not cover any unrelated subsequent claims including those associated with the City's 1998 parking area construction work adjacent to plaintiffs' property." In relevant part, the Release also contained the following language:

---

1. All references to rules are to Missouri Court Rules (2006), and all references to statutes are to RSMo (2000).

1. All parties to this agreement have agreed to settle this dispute on the following terms and conditions:

    a. [ACI], Two–Bit Town, Inc., and Donald Feese will provide the City with a 25–ft. easement on the existing Valley Road by quitclaim deed. The legal description for the easement will be determined by Krehbiel Engineering and approved by Elgin Surveying & Engineering, Inc.

    b. The City will give back to [ACI], Two–Bit Town, Inc., and Donald Feese by quitclaim deed all that part of the roadway easement on Valley Road running the length of plaintiffs' and Donald Feese's property not in use as part of the existing Valley Road including the relocated corner if feasible from an engineering standpoint as set out in part 1d, or the 25–ft. easement described in part a, along with other easements quitclaimed to the City by plaintiffs or Mr. Feese, but not in use. . . .

In November 1998, Lake Ozark executed a quitclaim deed (the Settlement Deed) as required by paragraph 1b of the Release. The Settlement Deed conveyed to Donald Feese the following property:

> All that property described in warranty deeds to Feese Real Estate, Inc. recorded in Book 273, Page 321 (also in [B]ook 142, Page 493); to [ACI], recorded in Book 178, Page 489; to [TCC] recorded in Book 273, Page 245; and to Two Bit Town, Inc. recorded in [B]ook 273, Page 319, all in Miller County, Missouri.
>
> Save and except the following described easements from [ACI] to [Lake Ozark] recorded in Book 204, Page 495; recorded in Book 205, Page 237; recorded in Book 215, Page 305; and in [B]ook 215, Page 307, all in Miller County, Missouri.

The property described in the Settlement Deed encompassed an irregularly-shaped parcel roughly 890 by 830 feet in size. The conveyed property extended northward all the way to the middle of the Highway 54 roadbed some 600 feet away and included all of the Disputed Land. Valley Road lies on the far southern end of the property conveyed by Lake Ozark.

In December 1998, Feese executed a quitclaim deed (the Transfer Deed) conveying the following property to Feese Real Estate, Inc., ACI, TCC and Two–Bit Town, Inc.:

> All that property described in warranty deeds to Feese Real Estate, Inc. recorded in Book 273, Page 321 (also in Book 142, Page 493); to [ACI], recorded in Book 178, Page 489; to [TCC] recorded in Book 273, Page 245; and to Two Bit Town, Inc. recorded in Book 273, Page 319, all in Miller County, Missouri.

The Disputed Land was included within the two parcels of land conveyed to ACI and TCC by Feese via the Transfer Deed.

After the Settlement Deed and Transfer Deed were executed, the public continued to use the sidewalk and parking area in the Disputed Land, and Lake Ozark continued to maintain those structures. At some point not disclosed by the record, Lake Ozark erected light poles and fixtures on the Disputed Land approximately 55 feet from the centerline of Highway 54. ACI and TCC (hereinafter collectively referred to as Plaintiffs) then erected a security fence in that same general location. Lake Ozark removed the fence, and the current litigation ensued.

After the parties filed cross-motions for summary judgment, the trial court heard arguments on the issue. Plaintiffs' position was that Lake Ozark intended to convey the Disputed Land pursuant to the Release and that this land was conveyed in exchange for the Valley Road easement rights Lake Ozark obtained in return.

Lake Ozark's position was that it never intended to convey the Disputed Land as a part of the 1998 settlement of the Valley Road litigation, but the Disputed Land was inadvertently included in the legal description of the property conveyed by the Settlement Deed. The trial court granted judgment to Lake Ozark. The court did so even though it determined that "[t]he parties, thus, do not agree as to whether or not [the Disputed Land] was supposed to be conveyed as a part of their settlement and that fact is in dispute." The court concluded that the intentions of the parties in the 1998 settlement were irrelevant, in that Lake Ozark could not convey the Disputed Land because there had not been "strict compliance with the statutes governing the way in which those public interests are to be vacated or abandoned." This appeal by Plaintiffs followed.

### III. Discussion and Decision

Plaintiffs present four points on appeal, but only one need be addressed. In Point II, Plaintiffs contend that the trial court erred in granting summary judgment because the decision was based upon the incorrect assumption that, regardless of the parties' actual intentions, Lake Ozark lacked the legal authority to convey the Disputed Land for consideration as part of the 1998 settlement. This Court agrees.

■■■ As Lake Ozark correctly points out, it did not have the legal authority to give away public property to a private corporation, association or individual. *See* Mo. CONST. art. VI, § 23 and § 25; *St. Louis Children's Hospital v. Conway*, 582 S.W.2d 687, 690 (Mo. banc 1979). On the other hand, Lake Ozark did have the legal

authority to convey its real property for valuable consideration to settle ongoing litigation. *See* § 79.010 (authorizing a fourth class city to "purchase, hold, lease, sell or otherwise dispose of any property, real or personal, it now owns or may hereafter acquire").[2] Therefore, the validity of the conveyance of the Disputed Land depends upon the City's intent. It is clear from the language of paragraph 1a and 1b of the Release that, as a part of the settlement of the Valley Road litigation, the parties intended an exchange of easements. The dispositive issue here is whether the record reveals a genuine issue of material fact concerning the identity of the easements Lake Ozark intended to exchange. Because the settlement was consummated via both the Release and the Settlement Deed, these two documents must be read together to capture what was intended. *Knob Noster R–VIII School Dist. v. Dankenbring*, 220 S.W.3d 809, 816 (Mo.App.2007). If the language of these two documents is plain and unambiguous, a court must determine the parties' intent without resort to parol or extrinsic evidence. *Anderson v. Curators of University of Missouri*, 103 S.W.3d 394, 399 (Mo.App.2003). If an ambiguity exists, on the other hand, parol evidence can be used "to show the surrounding circumstances and the relationship of the parties as indicating their real intent and the meaning of the contract, and also to show the practical construction placed upon the contract by the parties." *Robson v. United Pac. Ins. Co.*, 391 S.W.2d 855, 861 (Mo.1965) (citations omitted). Whether there is any ambiguity in the Release and Settlement Deed is a question of law. *Anderson*, 103 S.W.3d at 399.

---

**2.** A fourth class city is one containing between 500 and 2,999 inhabitants. *See* § 72.040. Lake Ozark had a 1990 population of 681 and a 2000 population of 1,489. *See* Official Manual of the State of Missouri 2003–

2004, p. 843. Therefore, this Court may take judicial notice that Lake Ozark is a fourth class city. *See Shelby County R–IV School Dist. v. Herman*, 392 S.W.2d 609, 611 (Mo. 1965).

We begin our analysis by noting that the Release expressly excluded from its scope "any unrelated subsequent claims including those associated with the City's 1998 parking area construction work adjacent to plaintiffs' property." Next, we note that the Disputed Land is not mentioned by name or description in that portion of the Release setting out the particular easements to be exchanged. Paragraph 1a of the Release required Feese to convey a 25–ft. easement on the existing Valley Road. As noted above, Valley Road lay 600 feet south of the Disputed Land. Paragraph 1b required Lake Ozark to convey two things: (1) "all that part of the roadway easement on Valley Road running the length of plaintiffs' and Donald Feese's property not in use as part of the existing Valley Road including the relocated corner if feasible from an engineering standpoint as set out in part 1d, or the 25–ft. easement described in part a"; and (2) "other easements quitclaimed to the City by plaintiffs or Mr. Feese, but not in use." Once again, the first easement Lake Ozark agreed to convey related solely to Valley Road, which was hundreds of feet away from the Disputed Land. The second group of easements the City agreed to convey were those that were received from Plaintiffs or Feese and that were not in use. This language does not appear to have any application to the Disputed Land because Lake Ozark acquired that property from the State, and the roadbed, sidewalks and parking area were "in use" at the time the Release was executed. The legal description of the land conveyed to Feese via the Settlement Deed, however, did include the Disputed Land.

▮ Based upon the inconsistency between the description of the property to be conveyed in the Release and the legal description of the property actually conveyed in the Settlement Deed, there is a patent ambiguity in these documents. This ambiguity creates a question of fact as to the intention of the parties that will require extrinsic evidence to resolve. *See Chadwick v. Chadwick*, 260 S.W.3d 421, 424 (Mo.App.2008); *Burrus v. HBE Corp.*, 211 S.W.3d 613, 619 (Mo.App.2006). Because there is a genuine issue of material fact concerning the parties' actual intentions in settling the Valley Road litigation, it was error for the trial court to grant summary judgment to Lake Ozark. *See Zeiser v. Tajkarimi*, 184 S.W.3d 128, 132–33 (Mo. App.2006); *Block v. North American Savings Bank, F.S.B.*, 59 S.W.3d 567, 574 (Mo.App.2001); *Tuttle v. Muenks*, 21 S.W.3d 6, 9 (Mo.App.2000); *MECO Systems, Inc. v. Dancing Bear Entertainment, Inc.*, 948 S.W.2d 185, 191 (Mo.App. 1997). "Summary judgment is particularly inappropriate when the underlying issue is one of state of mind, motivation, intent or some other subjective fact." *Barekman v. City of Republic*, 232 S.W.3d 675, 682 (Mo. App.2007). Point II is granted.

The judgment is reversed, and the cause is remanded for further proceedings.

RAHMEYER, J., and SCOTT, J., concur.